C. J. SNYDER, Appellant, v. THE TRIBUNE COMPANY, Appellee.

Prosecuting attorneys: APPEARANCE IN CIVIL ACTION: OBJECTIONS.
1  The statute precluding a county attorney from engaging in a cause for any party other than the state, based upon substantially the same facts as a criminal prosecution conducted by him, does not prevent him from appearing in a civil cause arising and prosecuted in another county, though based upon facts alleged to have occurred in his own county, and which had been the subject of criminal prosecution by him. And this rule is especially applicable where the criminal proceedings had terminated before the county attorney appeared in the civil suit, and the complaining party also contended that the facts involved in the civil suit had no relation to the criminal prosecution. In the instant case, however, the objection was raised for the first time in a motion for new trial and therefore came too late.

Evidence: CROSS-EXAMINATION: OBJECTION ON APPEAL. A party cannot
2  complain on appeal of matters developed by himself on cross-examination.

Slander and libel: MALICE: EVIDENCE. Ordinarily the source of infor-
3  mation out of which a libel grows, and the good faith and motive of the publisher, are immaterial, unless the article shows upon its face that it was based upon reports given by others. But where express malice is charged the defendant may show good faith, the absence of malice, and the source of his information, in mitigation of damages. He may also testify to the source of his information, not in mitigation of actual damages, but to negative express or actual malice.

Same: MITIGATION: PLEADINGS: INSTRUCTIONS. Where the defendant
4  in a libel action pleaded no retraction and made no reference to a second publication, not a part of the *res gestae*, and which was not published until after the plaintiff had commenced his action, the

second publication was not admissible for the purpose of mitigation or otherwise; as all matters in mitigation, except those growing out of the testimony of the adverse party, must be pleaded. And admission of the second publication, which was a modification to some extent of the original and which could only bear upon the question of mitigation, without limiting its effect so as not to permit the jury to consider it on the main issue, was erroneous.

Same: JUSTIFICATION: PLEADING. A plea in justification of an alleged libel, based upon the truth of the publication, must be as broad as the charge, and of the very charge.

Same: INNUENDO: PLEADING. Where a publication is libelous on its face, or the meaning of the language used is plain and unambiguous, no innuendo is required; but if the language is equivocal and admits of different constructions, an innuendo is proper to give it the meaning which the plaintiff thinks it ought to bear.

Same. The defendant may meet an innuendo, pleaded to give meaning to the alleged libel, by a general denial, or by justification; but he cannot in a plea of justification admit part and plead the truth thereof; since a proper plea of justification admits the truth of the innuendo, unless it places a forced construction upon the words used and thus enlarges the ordinary sense of the words so that they obviously do not mean what the innuendo charges.

Same: LIBELOUS PUBLICATION: CONSTRUCTION. In the instant case the defendant published an article referring to a series of parties by boys and girls culminating in a dance at the opera house, and as a result several of the boys were indicted, one of the girls sent to the reformatory and several others placed on probation. That it was said all of the persons interested were intoxicated, and that among those arrested was the plaintiff, who owned and conducted a drug store; that he was charged with maintaining a liquor nuisance and with selling liquor at his drug store. That an equal number of young men and women held a party at a vacant house and were under the influence of liquor, and that other like gatherings and occurrences were had in the town. Held, that in so far as the article referred to plaintiff the language was ambiguous and authorized the pleading of an innuendo that it was intended to mean that plaintiff was guilty of selling liquor to the participants in the festivities.

Same: PLEADING: CONSTRUCTION. Where the publication charged plaintiff with maintaining a liquor nuisance and illegally selling liquor, and plaintiff pleaded an innuendo that it was intended to charge that he was in some way connected with the sale of liquor

to certain parties, the general allegation that the published article was false meant that it was false in the sense charged in the innuendo.

**Same: INNUENDO: EVIDENCE: PREJUDICE.** Where a publication not only charged plaintiff with maintaining a liquor nuisance and illegally selling liquor, but was so ambiguous as to permit an innuendo alleging that he was connected with certain orgies by selling liquor to those engaged therein, admission of evidence by defendant to prove the truth of the article on the theory that it simply charged plaintiff with keeping a nuisance, and denial of the right of plaintiff to show that he was in no manner connected with the orgies referred to, and that the charge of plaintiff's connection therewith as explained in the innuendo was false, was erroneous.

**Same: SUBMISSION OF ISSUES: ESTOPPEL.** Where the plaintiff requested the court to submit the construction of the alleged libelous article to the jury, he could not thereafter contend that the court erred in omitting to charge that it was libelous *per se*, because not susceptible of any other interpretation than that placed upon it by the innuendo.

EVANS, J., dissenting.

*Appeal from Woodbury District Court.*—HON. FRANK R. GAYNOR, Judge.

SATURDAY, OCTOBER 25, 1913.

ACTION for libel. Trial to a jury. Verdict and judgment for defendant, and plaintiff appeals.—*Reversed.*

*Sears & Snyder* and *Herrick & Herrick* and *J. A. Miller,* for appellant.

*Henderson & Fribourg,* and *Walter P. McCulla,* for appellee.

DEEMER, J.—A very large part of the record is taken up with the pleadings in the case, which are extremely voluminous. Some of the propositions relied upon have reference to these pleadings, but, instead of setting them out in extenso, we shall, at a proper time, make sufficient reference thereto to elucidate the exact points presented.

The defendant is a corporation conducting a daily newspaper in the city of Sioux City. Its stockholders are J. C. Kelly and his two sons, John and Eugene. At the time in question, one Ellerd was a reporter for the paper; G. K. Larimore, since deceased, was its telegrapher; one Elliott was another reporter; and John Biddison was city editor. Hearing of some escapades in the city of Cherokee and learning from one of the judges of the district court that the grand jury of Cherokee county had returned an indictment against plaintiff, Ellerd was delegated to procure and gather the facts with reference thereto. This he did; Elliott participating therein to some extent by conferring with W. P. McCulla, the county attorney of Cherokee county and a professor in the Cherokee County High School. Elliott, it seems, learned of the indictment of the plaintiff from the judge before spoken of. As a result, the following article was published in the January 13, 1912, issue of the Sioux City Tribune, the paper published by the defendant corporation:

Midnight Revels Ordinary Resort of Young People—Cherokee is Shaken to Center by Disclosures of Vicious Habits among Persons under Age—Drunkenness is Common— Girls and Boys Mixed in Escapade in Which Drinking is Carried to Point Passing Belief.

Cherokee, Ia., Jan. 13. A series of revels of high schools boys and girls of this place, culminating in a 'Little Egypt' dance on the stage of the opera house, following a performance of 'Uncle Tom's Cabin,' has resulted in the indictment of seven young men, the commitment of one girl to the state reformatory and the placing of a number of boys and girls under probation.

The investigation carried on by County Attorney Walter McCulla has scandalized this community. It was found that a number of high school boys and other young men about town had been bringing liquor into the town and staging some high life parties on the steps of the courthouse, in a vacant house and in the opera house.

The story of the jamboree of three young men and three girls in the opera house is told here. It is said that all were

intoxicated and that a sixteen year old high school girl held the center of the stage with a racy dance. The county attorney was unable to gather sufficient information to verify this party, outside of the fact that all six participants were intoxicated.

Another party of five young men and the same number of young women is said to have been 'put on' in a vacant house, from which all went away under the influence of liquor. The skating rink and the courthouse steps were also favorite scenes for the orgies, it is said.

## The Offending Parties.

The arrests made thus far have been those of Miss Olive Minor, who has been placed in the state reform school; Roy Wadsley, the twenty year old son of a wealthy retired farmer of Cherokee; Frank Edwards, a twenty year old boy whose father is at the head of the Cherokee Bottling Works; Henry Cooper, a resident of Cherokee; and C. J. Snyder, who is the owner of a drug store at Cleghorn, Iowa.

A third boy, who is sixteen years old, pleaded guilty to the charge of selling liquor to minor girls. The youth's mother is ill at the present time and his name would not be disclosed. Wadsley and Edwards were charged with selling liquor to minor girls. The other two youths, against whom are indictments for selling liquor to minor girls, will probably be taken into custody on Monday, says Mr. McCulla. Snyder and Cooper were charged with maintaining a nuisance, the former, it is alleged, has sold liquor at his drug store in Cleghorn, and the latter at his residence in Cherokee.

Three other young girls, no one of whom is over eighteen years, and one of whom has already spent some time in the state reformatory, are now on probation and will be committed to that institution on their next offense, according to the county officials. One of the three is still in attendance at the high school. No information has been filed against the three girls as yet.

## Curfew Law Again.

The investigation has also disclosed conditions that have moved the city council of Cherokee to re-establish the 8:30 o'clock curfew. Some remonstrances have been filed against

the ringing by people residing near the local fire house on account of the noise.

It is said the employees of the opera house have been using their keys to return to that building late at night and put on jamborees. The special instance partially disclosed by the investigation of the county attorney, revealed some thrilling facts. One of the girls in the party was about twenty-one years old, but the other two were fifteen and sixteen years of age. The employee of the house is about twenty-six years old, but the other two boys are sixteen and twelve years, respectively. The party followed a performance of 'Uncle Tom's Cabin' and the drinking is said to have consisted mostly of beer. All six were intoxicated and the youngest girl is said to have staged such a dance as was never before seen in Cherokee.

### Many Intoxicated.

Special instances of drinking on the courthouse steps and in the skating rink were also disclosed. The party of ten in the vacant house was found out because some of the participants were so drunk they couldn't get away, according to the statements of a resident here.

Nearly all the persons implicated in the affair are under age. Several of the boys and girls attended the high school last fall, but dropped out as the season advanced. Some of them are said to be in school at the present time.

The investigation was the outcome of vague rumors circulated about the town of the stew-bum parties and the complaints of drunken men appearing on the streets. Cherokee is a dry town. It is thought by the county attorney that most of the liquor was shipped in from Sioux Falls.

The town is still in great commotion and further developments may appear before the investigation ends.

The head lines of the article were written by the telegraph operator, since deceased.

Plaintiff alleged that:

In the printing and publishing of said article, the said defendant intended maliciously to and did charge this plaintiff with having engaged in the illegal sale of intoxicating

liquors to the members and pupils of the high school of said city of Cherokee, Iowa, and of selling and furnishing such intoxicating liquors to young boys and girls, who were pupils and students attending high school, for the purpose of getting them to drink such intoxicating liquors, and also charging this plaintiff further with having taken part in certain performances in various places in said city of Cherokee with young boys and girls, and which performances were of immoral character, and did in the said article falsely and maliciously charge this plaintiff, by setting forth said matters in said article, with being a man of immoral character and unfit to associate with young men and young women, and that his influence upon young men and young women, by reason of said immoral and improper acts, so falsely and maliciously alleged to have been committed by him, was of a baneful character.   That said article was false, malicious, and defamatory and calculated to provoke this plaintiff to wrath and expose him to public hatred, contempt, and ridicule and to deprive him of the benefit of public confidence and social intercourse.

The defendant, among other things, admitted the publication of the article, save that it bore the following introduction, "Special to Tribune;" denied that it was actuated by malice in making the publication; denied that it was wholly false as alleged and denied that it was defamatory or libelous; denied that it was intended to or did ·charge that plaintiff was guilty of the illegal sale of liquors to pupils or members of the Cherokee High School; alleged that the publication was, in all respects, substantially true and that it was printed without malice, for good motives and justifiable ends and simply as a matter of news. As a further defense, the answer pleaded in justification matters which will be referred to in another division of this opinion.   And further pleaded that: ".   .   .   Said publication was a report of proceedings of a court of record and was substantially true as published; and that the same was published without malice, with good motives, and for justifiable ends; and that said publication was privileged."   Defendant also alleged: ".   .   .   That with the exception of the allegation in said article as published that

the plaintiff had been arrested and charged with maintaining a nuisance in the illegal sale of intoxicating liquors in his drug store at Cleghorn, Iowa, the language in the article did not refer to the plaintiff and was not used, nor intended to be used, in a defamatory sense; and with the exceptions named, in its fair and ordinary meaning and plain and natural import, the language used is not defamatory of plaintiff nor libelous.'' Practically all of these matters were repleaded in mitigation of damages; and further, in mitigation, defendant pleaded: ''That the said article was printed and published without any unkindness, ill will, or malice towards the plaintiff, who was a stranger to the defendant, and upon what was considered and believed to be reliable information, and was published by the defendant believing the same to be true and for the sole purpose of giving, as information to the public, the true facts, and without any intention to injure or defame the plaintiff.''

Various motions and demurrers were filed to these pleadings and to specific parts thereof, and parts of the petition were stricken, but the answer stood substantially as quoted, and the case went to trial on the issues thus joined; the jury returning a verdict for defendant.

I. It appears that the county attorney of Cherokee county, from whom the reporter claims to have obtained this information, sat at the trial table with defendant's counsel and was referred to in the examination of the reporter as the party from whom he got his information. This was done without any objection from plaintiff or his counsel. It also appears from the record that this county attorney, without any objection from plaintiff, save as hereinafter indicated, appeared as one of counsel for the defendant. After the verdict was returned, plaintiff, in his motion for a new trial, objected to the presence and the appearance of this county attorney, claiming that the court had erred in permitting his appear-

1. PROSECUTING ATTORNEYS: appearance in civil actions: objections.

ance or presence with defendant's counsel during the trial and also in allowing a witness to point him out as the source of his information. Down to that time there had been no objection of any kind to the appearance or presence of Mr. McCulla, and of course the court had not theretofore made any rulings upon which error could be predicated. But counsel now insist that the appearance of the county attorney as one of counsel for defendant was prohibited by statute, and that a new trial should have been awarded on this ground alone.

The statute referred to is 305 of the Code, which, so far as material, reads as follows: "No county attorney shall . . . be directly or indirectly engaged as an attorney or otherwise for any party other than the state or county in any action or proceeding pending or arising in his county, based upon substantially the same facts upon which a prosecution or proceeding has been commenced or prosecuted by him in the name of the county or state."

Conceding, for the purpose of argument, that plaintiff's objections were timely and raised the question in a proper manner, it is manifest that the statute does not apply here, for the obvious reason that the county attorney was not appearing in a civil case in the county of which he was the prosecuting attorney. *Bellison v. Apland & Co.*, 115 Iowa, 599.

Moreover, plaintiff had pleaded guilty to the offense of the illegal sale of liquor before the county attorney appeared for defendant, and the alleged libel, as stated in the petition, had no reference, according to plaintiff's contention, to the facts upon which he was being prosecuted in Cherokee county.

Aside from this, however, it was distinctly held in *State v. Smith,* 108 Iowa, 440, that plaintiff's objections came too late.

II. Both the managing owner of the paper and the reporter who gathered the facts upon which the article was

based were permitted to testify to their good faith in the making of the publication; that they were unacquainted with plaintiff and bore him no ill will; and each was permitted to give the source of his information and to construe the article complained of.

2. Evidence:
cross-
examination:
objection on
appeal.

Upon the latter matter, the reporter, on cross-examination by plaintiff's counsel, testified as follows:

When I say the article was correct in so far as Mr. Snyder I have in mind his indictment for the illegal sale of liquor. Q. You don't pretend to say that the article is correct in connection with these high school orgies? Court: He testified it is a correct report of what Mr. McCulla told him. Mr. Sears: I didn't understand it that way. If it is understood the record of his testimony is that the article is correct interpretation of what Mr. McCulla told him, then I don't care to press this line of questions. A. That is exactly what I said. Q. Then, so far as you know, you can't say whether or not the allegations in the article are true or false, can you? A. No, sir; only I have been informed— Q. Never mind what you have been told. Hearsay isn't good testimony.

On cross-examination of Kelly, counsel for plaintiff also brought out the following:

Q. As a newspaper man you say that the article, Exhibit A, introduced by the plaintiff, of which he complains, was so worded that Mr. Snyder nor any one else could think he was connected with the high school escapade? A. I wouldn't say any one else, but I submit that a fair interpretation of it, in accordance with the construction of language and of words, does not charge him with this offense at Cherokee. So far as I am concerned personally in my judgment that article, Exhibit A, wouldn't be understood and shouldn't be understood by any one as charging him with being connected with the high school escapades. . . . Q. If in your judgment after reading the article, Exhibit A, you thought it couldn't be understood by any one reading it as an item of news that

Snyder was in any way implicated with the high school escapades, why, then, did you publish these two articles, Exhibits 2 and 3, specifically calling attention to the fact he wasn't intended to be connected with it? (Defendant objects for the reason Exhibit 3 isn't in evidence. No ruling.) A. Because of the general rule in my office never to injure anybody needlessly or in any way, if we can avoid it, and because of the rule as published at the top of the editorial page that includes a notice where injury has been done, perhaps unconsciously, through the management of the paper, notifying them to call attention to it that they may obtain retraction. No one called my attention to this article, Exhibit A. No complaint was made to me by the plaintiff or anybody for him. . . .

As this matter seems to have been brought out by plaintiff himself on cross-examination, he has no cause for complaint.

Ordinarily the source of the information, out of which a libel grows, and the good faith and motives of the author and publisher are immaterial, unless the article itself shows that it is based upon reports given by others. But, where express malice is charged, it is competent for the libelant to show good faith, the absence of malice, and the sources of his information, in mitigation of damages. *Morse v. Printing Co.*, 124 Iowa, 707. It is true that a different rule was announced at an early day in *Barr v. Hack*, 46 Iowa, 308; but the holding in that case was distinctly disapproved after a careful examination of the authorities in *Dorn v. Cooper*, 139 Iowa, 751 *et seq.*

3. SLANDER AND LIBEL: malice: evidence.

This latter case is also authority for the proposition that the libelant may testify as to the sources of his information, not to mitigate actual damages, but to negative express or actual malice. See also, to the same point, *Marker v. Dunn*, 68 Iowa, 720; *Wallace v. Homestead*, 117 Iowa, 348; *Hinkle v. Davenport*, 38 Iowa, 355.

III. On the Monday following the publication of the article (which was on the 15th day of January, 1912), the

plaintiff caused an original notice of an action against the defendant to be served upon it, which stated that a petition would be filed on or before the 20th day of January, and on the 17th of the same month the defendant caused the following article to be published in the issue of the paper for that day:

4. SAME:
mitigation:
pleadings:
instructions.

Cherokee Youths Plead Guilty to the Indictments—Opera House Stage Manager, in Default of Payment of $200 Fine is Serving Jail Sentence—Snyder Not Implicated— Cleghorn Druggist and Cooper Charged with Selling Liquor to Persons Other than Those Indicted.

### Special to the Tribune.

Cherokee, Ia., Jan. 17.—Prosecution upon the indictments returned by the grand jury last week, charging well known young men of Cherokee with giving liquor to minors, is proceeding in the district court as rapidly as the cases can be taken up.

George Edwards, janitor and stage manager of the Grand Opera House, pleaded guilty to the charge and was fined $200, in default of the payment of which he is serving a sentence of sixty days in jail. He is twenty-four years of age and a married man. His wife is suing for a divorce.

A young man whose name is withheld because of his mother's serious illness, plead guilty and was fined $25.

### Crowd at Courthouse.

The cases of Frank Edwards, aged twenty, and Roy Wadsley, aged twenty, stage hands at the opera house, were taken before Judge Oliver in the district court yesterday. The court-room was filled with an expectant throng of men and boys who apparently expected to hear some racy testimony. After a delay of an hour waiting for the principal witness subpœnaed by the state, Miss Byrd Casey, it was discovered that the bird had flown.

Miss Casey is said to have taken the morning eastbound train bound for a destination unknown to the attorneys in the case. The impression around the courthouse seemed to be

that her immediate return is not to be relied upon. If she does return, the charge against Edwards will be taken up later in the term.

Wadsley's case, at the request of his attorneys, Molyneux & Mayer, was continued until the next term of court, which opens March 18, being set for the second jury trial at that time.

### Snyder's Case Different.

While the grand jury, at the same time the indictments were brought against the foregoing young men, returned an indictment against C. J. Snyder, a druggist at Cleghorn, Iowa, charging him with maintaining a nuisance there in that he sold liquors illegally, and another indictment against Henry Cooper, a resident of Cherokee, charging him with selling liquors illegally at his house in Cherokee, it is stated by County Attorney Walter McCulla that these indictments had no connection with the prosecution of the young people whose 'can parties' and other convivial functions have become notorious in Cherokee.

Neither Snyder nor Cooper is accused of selling liquor to the boys who have been indicted for staging the merry drinking parties with young friends of the fair sex. The cases against Snyder and Cooper have not yet been set for trial.

### Regretted in Cherokee.

The reckless behavior of this coterie of 'sporty' young people is a matter of great regret to the citizens of Cherokee. They particularly deprecate the connection of the affair with the high school, in which they take great pride, and declare that only one of the accused participants was a high school pupil at the times the 'orgies' were being conducted. It is further stated that this high school girl had no part in putting on any 'Little Egypt' dance, if such a stunt was 'pulled off.'

No petition was filed pursuant to the original notice served on January 15th, and this action was not commenced until March 13, 1912. After showing the service of the

original notice, defendant offered this second publication in evidence and the following record was made with reference thereto: "The plaintiff objects as not proper under the issues; there is no issue of a retraction here; and it is not pleaded as a defense, and the further reason it is incompetent, irrelevant, and immaterial in this case. Overruled. Plaintiff excepts." Complaint is made of the ruling. As no retraction was pleaded and no reference whatever was made in the pleading to this second publication, we are disposed to think that the testimony should not have been received.

This second publication was no part of the *res gestæ*, and it was not published until after plaintiff had commenced an action by the service of an original notice. If admissible at all, it was only in mitigation of damages; and as the statute (Code, section 3593), requires that all mitigating circumstances, save such as are shown by, or grow out of, the testimony adduced by the adverse party, be pleaded, the error is apparent. *Ronan v. Williams,* 41 Iowa, 680; *Halley v. Gregg,* 82 Iowa, 622.

Moreover the court, after receiving this testimony, which in no event could be considered, so far as defendant is concerned, except in mitigation of damages, gave no instructions upon the subject and left the jury to deal with this testimony as it would; and that prejudice resulted from admitting the second publication in evidence, without in any way limiting its effect upon the case, we have no doubt.

IV. It will be noted that the pleadings are peculiar. Plaintiff by innuendo, charged that the defendant intended to and did charge plaintiff with the illegal sale of intoxicating liquors to the members and pupils of the high

5. Same: justification: pleading.

school and with selling them liquors for the purpose of getting them drunk and of having taken part in certain performances of young boys and girls and with being a man of immoral character and unfit to associate with young men and women, etc. He also charged that the entire article was false, defamatory, and untrue. Defendant denied that the article was wholly false and expressly

denied the innuendo. It also pleaded that said publication was in all respects substantially true, etc. It also pleaded its version of the article and then averred that such version was true, etc.

A demurrer was interposed to these defenses pleading the truth of the matters charged in the article, because the justification was not as broad as the charge and of the very charge, and to other parts of the answer setting up, as a defense, justification and privilege, because the article was a report of certain court proceedings. We are of opinion that the demurrer to some of the divisions of the answer should have been sustained. The law is well settled that the plea of justification, based upon the truth of the article must be as broad as the charge and of the very charge. *Forshee v. Abrams,* 2 Iowa, 571; *Hollenbeck v. Ristine,* 105 Iowa, 489; *Beardsley v. Bridgman,* 17 Iowa, 290; *Clifton v. Lange,* 108 Iowa, 474; *Berger v. Publishing Co.,* 132 Iowa, 290; *Prewitt v. Wilson,* 128 Iowa, 198; *Morse v. Printing Co.,* 124 Iowa, 707.

As said in *Prewitt v. Wilson, supra:* ''Justification or avoidance of an act which is not charged, or of a matter which is not confessed, is both illogical and absurd and presents no issue.'' Aside from the allegation in the petition that the entire article was false, defamatory, and untrue, there was no allegation that the statement in the article with reference to plaintiff having been charged with maintaining a nuisance and having sold liquor in his drug store at Cleghorn was the matter complained of, and there is nothing to indicate that this was the matter which constituted the libel.

The innuendo (the office of which is to connect the defamatory matter with other facts and circumstances, sufficiently expressed before, either in the inducement or otherwise, and for the purpose of showing the meaning

6. SAME:
   innuendo:
   pleading.

and application of the charge) made no reference to the illegal sale of liquors, save as connected with the orgies of the other persons mentioned. If the publication is libelous on its face or the meaning of the

language is plain and unambiguous, no innuendo is required; but, if the words are equivocal and admit of several meanings, an innuendo is proper, for thereby plaintiff fixes the meaning which he thinks they .ought to bear. *Kinyon v. Palmer,* 18 Iowa, 377; *Wallace v. Homestead Co.,* 117 Iowa, 348; *Quinn v. Insurance Co.,* 116 Iowa, 522.

Defendant may meet this innuendo by a general denial or he may admit it and plead justification. He cannot, in a plea of justification, admit a part and plead the truth thereof, for

7. SAME.

a proper plea of justification admits the truth of the innuendo, unless it places a forced and unnatural construction upon the language used and so enlarges the natural and ordinary sense of the words as that they obviously do not mean what the innuendo charges. *Prewitt v. Wilson, supra, Morse v. Printing Co., supra,* and cases hitherto cited. Appellee's position, as we understand it, is that the language used in the alleged libel is not broad enough to support the innuendo and that the plea of justification is and was sufficient.

As said in *Wallace v. Homestead Co., supra:* "An innuendo is not an averment but only matter of explanation. It means nothing more than the words 'id est,' 'scilicet,' or 'meaning,' or 'aforesaid,' as explanatory of a subject-matter sufficiently expressed before; as such a one meaning the defendant, or such a subject meaning the subject in question. An innuendo cannot extend the sense of the expressions in the alleged libel beyond their own meaning. Where the words used are ambiguous or admit of different applications, an innuendo may confine or direct them but cannot extend the intendment of an expression beyond the customary meaning. If this were not true, an explanation of antecedent matter would be converted into a direct averment."

Applying this rule, appellee contends that the language used will not bear the interpretation placed upon it, and that, as the only charge which was made was the illegal sale of liquor, its plea of justification was good.

We are inclined to the view that the words were so ambiguous that they might have been understood as charged in the innuendo and that some of the pleas of justification were not good and raised a false issue. It is well settled that, where the petition contains more than one charge, the defendant may justify as to one and deny or otherwise plead as to others. *Tull v. David,* 27 Ind. 377; *Hay v. Reid,* 85 Mich. 296 (48 N. W. 507); *Lanpher v. Clark,* 149 N. Y. 472 (44 N. E. 182); *Powers v. Skinner,* 1 Wend. (N. Y.) 451. But care must be exercised in the application of this rule, for the ordinary doctrine is that the justification and the evidence in support thereof must be confined to the matter charged in the petition, else a false issue is made, which may mislead the jury. A proper plea of justification either expressly or impliedly admits the truth of the innuendo; and, where a defendant sets up the truth, he must justify the words in the sense in which the innuendo explains them, unless the words used in the innuendo enlarge the natural and ordinary sense of the language or otherwise place a false construction thereon. *Clifton v. Lange,* 108 Iowa, 472, and cases hitherto cited.

8. SAME: libelous publication: construction.

In *McClintock v. Crick,* 4 Iowa, 455, this court, speaking through Wright, C. J., said:

In the first answer, however, there is what is claimed to be a plea in justification, which is not contained in the second, and it is urged that the court erred in sustaining plaintiff's demurrer to such plea. The substance of this portion of the answer is as follows: 'And for a further answer defendant says that the said plaintiff, either in person or through his (plaintiff's) children and with plaintiff's knowledge and consent, did kill, take, and carry away, and appropriate to his own use, chickens belonging to defendant.' To understand this language, it is proper to state that plaintiff claims that defendant charged him, on several occasions, with stealing his (defendant's) chickens. That this allegation of the answer is wanting in almost every essential to make it a good plea of justification is most manifest. It fails to confess the

speaking of the words. See Starkie on Slander, 248. It fails to set forth such matters as fix upon the plaintiff any crime,.much less the specific one imputed to him by the words charged in the petition of plaintiff. The justification, so far from being in point of law, identical with the charge in the petition falls short of justifying any offense or of showing that, in the taking of said chickens, there was any crime whatever. That a plea which relies upon the truth of the words spoken, as a bar to recovery, is fatally defective, which is wanting in the particulars above suggested, is well settled. See 1 American Leading Cases, 178, and cases there cited.

Again in *Fountain v. West,* 23 Iowa, 9, the court said:

Nor did the court err in refusing to allow another witness, on the trial, to testify 'that the plaintiff was in the habit of committing larcenies; that he had stolen large quantities of timber, corn, posts, etc., and was thereby guilty of all manner of meanness and rascality.' The court certifies that it sustained the objection to this evidence on the ground that the substantial charge, in the alleged libelous writing, was that plaintiff had poisoned George West's cattle, and the remainder was aggravatory matter to the main charge. The court accordingly confined the defendants, in proof of their justificatory plea, to facts and circumstances tending to prove that the plaintiff did poison the cattle. In our judgment the view of the court was manifestly correct.

In that case the libel charged by the plaintiff was as follows:

We, whose names are hereto affixed, have good reason to believe, from circumstantial evidence and from threats that have been made to certain individuals, that you are the man that poisoned George West's cattle; knowing that you are a man who is guilty of all manner of meanness and rascality, and a man that bears the worst character of any man in Harrison county, and the only man we believe would be guilty of the like, therefore, if you are hereafter known to be guilty of any more villainous conduct or any more stock poisoning, you will be dealt with as justice may demand,

And the innuendoes were that it was done ". . . 'to cause it to be suspected and believed that the plaintiff was guilty of the crime of poisoning cattle' . . . 'to cause it to be suspected and believed that the plaintiff was guilty of the offenses and improper conduct therein imputed to him.' "

Again in *Halley v. Gregg*, 82 Iowa, 622, the court said:

We think the court did not err in striking the parts of the pleading upon this motion. The amendment to the answer clearly showed an attempt to plead matter (other words spoken and written) constituting wholly new transactions as a defense to the action. He does not plead these matters in justification or in mitigation but denies the speaking of the words and the making of the writing and declares as a defense to the action that he did speak other words and publish other writings of and concerning the plaintiff which are true, and therefore the plaintiff ought not to recover. We need not waste time in pointing out the great error of this kind of pleading. It would lead to the trial of issues not in the case, which could be indefinitely multiplied by defendant. He could bring before the court in his pleadings all he ever said or wrote to the plaintiff's discredit and demand that issues be found thereon and tried by the court. The district court, we think, rightly sustained the motion to strike the amendment to the amendment and rightly ruled in excluding evidence offered as to matter of the character pleaded in the amendment stricken. . . .

In one division of defendant's answer, it pleaded: "And further answering in defense the defendant alleges that said publication was in all respects substantially true; and that said article was printed and published without any unkindness, ill will, or malice towards the plaintiff, and with good motives, and for justifiable ends, and for the sole purpose of giving, as information to the public, the true facts." To this plaintiff filed a motion to strike and a demurrer and both were overruled. Under the doctrines announced in the cases just cited, these rulings were erroneous.

Again defendant pleaded: "And further answering as

a defense the defendant alleges the facts to be that the said article in substance and effect alleges that the plaintiff was the owner of a drug store at Cleghorn, Iowa, and that he had been arrested and charged with maintaining a nuisance in the illegal sale of intoxicating liquors at his drug store in Cleghorn, Iowa. And the defendant as a defense alleges that the said charges, so made against the plaintiff, were, substantially true; and that the plaintiff had been arrested and charged with maintaining a nuisance in the illegal sale of intoxicating liquors in his drug store at Cleghorn, Iowa; and that thereafter he pleaded guilty to said charge and was sentenced and fined and paid his fine for said offense; and that the defendant published said article with good motives and for justifiable ends and without malice towards the plaintiff.'' This was also attacked by both motion and demurrer; and, as we think the innuendo confines the charges to sales of liquor to high school students and to the charge that plaintiff was connected in some way as by the sale of liquors to those engaged in the orgies, the plea is not as broad as the charge and of the very charge and that it is therefore bad. *Mulvaney v. Burroughs,* 152 Iowa, 439.

The only doubt arising here is the general charge in the petition that the article was false, malicious, etc.; but, properly analyzed, we think that this meant nothing more than that

9. SAME: pleading: construction.

it was false in the sense charged in the innuendo. We shall not refer to the entire pleading to point out other matters therein; and our pronouncement of the rules applicable to such pleadings is made simply as a guide to the parties and to the trial court upon a remand of the case for a retrial without attempting to pass upon the correctness of each and every ruling on the pleadings.

Appellee's claim that the language used in the article complained of will not bear the interpretation put upon it by the innuendo is unsound, and hence almost the entire structure of his argument falls. Appellee admits that, if

plaintiff had admitted that he had been charged, indicted, and convicted of maintaining a liquor nuisance, his plea of justification was bad; and we think the statements in plaintiff's petition as made in the innuendo was in effect such admission and that it is perfectly apparent that he was not claiming a libel upon him because of the charge that he had been indicted for maintaining an ordinary liquor nuisance.

V. It is true that the court submitted to the jury the proper construction of the article; and, if there were nothing more in the case than these rulings on pleadings, we might say that no prejudice resulted. But in the introduction of testimony the case proceeded upon the theory advanced in the pleadings for the defendant and rulings were made which were erroneous, because, no doubt, of the issues presented by the answer which were allowed to stand, notwithstanding the attacks made thereon.

10. SAME: innuendo: evidence: prejudice.

In other words, defendant was permitted to prove the truth of the article on its theory that it did no more than charge the keeping of an ordinary liquor nuisance, while plaintiff was denied the right to show that he was not in any manner connected with the orgies referred to in the article or to prove in rebuttal of defendant's testimony advanced in justification that he was not in any manner connected with the orgies charged and that the article as explained in the innuendo was entirely false and untrue.

VI. As plaintiff asked the court to charge the jury that the interpretation of the article was for it, he is in no position now to say that this question was for the court and that the jury should have been told that the article was libelous *per se*, because it would bear no other interpretation than that placed upon it by the innuendo. In this connection we may say that the case was tried in a peculiar manner. Plaintiff did not introduce any testimony as to how the article was understood by the readers thereof; but on cross-examination of defendant's witnesses he

11. SAME: submission of issues: estoppel.

brought out their understanding of the matter, and, having brought this out, he did not on rebuttal, even if he could properly have done so, attempt to show any other version than that given in the cross-examination.

Of course plaintiff cannot complain of the testimony brought out by his counsel on cross-examination. We are not to be understood as saying that it was necessary for plaintiff to introduce any testimony as to how the readers of the article understood it. But we do think that it was a fair question for the jury to say whether or not it would reasonably bear the interpretation placed upon it by the innuendo. At any rate, because of the instructions asked, plaintiff has no ground of complaint.

For the errors pointed out, the judgment must be, and it is, *Reversed.*

GAYNOR, J., taking no part.

EVANS, J. (dissenting). The publication set forth in the petition was libelous *per se* without innuendo. The innuendo purported to set forth additional meaning or intent in such publication. I think, therefore, that the defendant was entitled to plead the truth of the publication in justification and yet deny the innuendo. Where a defamatory meaning is apparent on the face of the alleged libelous publication, no innuendo is necessary. If pleaded, it may be insisted on by the plaintiff or be ignored and treated as surplusage.

In the case before us, the innuendo could be treated as surplusage at any stage of the trial or the jury could reject the same upon submission; and yet this would not necessarily defeat plaintiff because his petition set forth a publication libelous *per se,* regardless of innuendo. The only defense which defendant has is to plead the truth thereof as justification. By the majority opinion he is not permitted to plead such justification unless he confess the innuendo. If the innuendo were essential to the cause of action, a different

question would be presented. But, where a complete cause of action is shown by the petition in the form of a publication libelous on its face, there is no fair reason why the defendant may not admit the publication and plead the truth in justification and yet disclaim and deny the innuendo. Otherwise there is no escape for the defendant even though the innuendo should prove unfounded.

Odgers lays down the rule as to "Justifying the Innuendo" as follows:

Justifying the Innuendo. Again the plaintiff often attempts by the aid of an innuendo in his statement of claim to give the words a secondary meaning different from that which they would naturally bear. In such a case the defendant may justify the words either with or without the meaning alleged in such innuendo, or he may do both. *Watkin v. Hall,* L. R. 3 Q. B. 396; (37 L. J. Q. B. 125; 16 W. R. 857; 18 L. T. 561). He may deny that the plaintiff puts the true construction on his words and assert that, if taken in their natural and ordinary meaning, his words will be found to be true; such a plea involves the justification of every injurious imputation which a jury may think is to be found in the alleged libel. *Digby v. Financial News, Ltd.* (1907) 1 K. B. at page 507. Or he may boldly allege that the words are true even in the worst signification that can be put upon them. But a defendant may not put a meaning of his own on the words and say that in that sense they are true, for, if he deny that the meaning assigned to his words in the statement of claim is the correct one, he must be content to leave it to the jury at the trial to determine what meaning the words naturally bear. *Brembridge v. Latimer,* 12 W. R. 878; (10 L. T. 816). Nor may he plead, 'I did not publish precisely the words stated in the claim, but something similar, and that something similar is true in substance and in fact.' *Rassam v. Budge* (1893) 1 Q. B. 571; (62 L. J. Q. B. 312). If the defendant pleads simply that the words are true without any reference to the innuendo, he must be prepared at the trial to prove the words true in whatever sense the jury may think it right to put upon them. *Ford v. Bray* (1894) 11 Times L. R. 32. But, if he pleads in the more qualified form that 'the words without the said meaning' are true, he will not

be allowed at the trial, should the jury deem the said meaning the true one, to turn round and give evidence that the words in that sense are true.   (Odgers on Libel and Slander (5th Ed.) pages 188, 189.)

The following excerpts from Words and Phrases, vol. 4, page 3631, is a sufficient indication of the general state of the authorities on this question:

When the new matter stated in an innuendo is not necessary to support the action, it may be rejected as surplusage. *Cooper v. Greeley* (N. Y.) 1 Denio, 347, 361; *Thomas v. Croswell*, 7 Johns. (N. Y.) 264, 271 (5 Am. Dec. 269).

The office of an innuendo is to aver the meaning of the language published; but if the common understanding of mankind takes hold of the published words, and at once, without difficulty or doubt, applies a libelous meaning to them, an innuendo is not needed and, if used, may be treated as useless surplusage.   *Wood v. Boyle,* 177 Pa. 620 (35 Atl. 853, 854, 55 Am. St. Rep. 747); *Continental Nat. Bank v. Bowdre,* 92 Tenn. 723 (23 S. W. 131, 134); *Benton v. State,* 59 N. J. Law, 551 (36 Atl. 1041, 1043).   See, also, *Grand v. Dreyfus,* 122 Cal. 58 (54 Pac. 389, 390).

"The term 'innuendo' is used in the law of slander and libel to designate the averment in the plaintiff's statement of claim of the construction which he puts upon the alleged libelous words and 'which he will endeavor to induce the jury to adopt.' 'Where a defamatory meaning is apparent on the face of the libel itself, no innuendo is necessary, though even there the pleader occasionally inserts one to heighten the effect of the words; but where the words *prima facie* are not actionable an innuendo is essential to that action.   It is essential to bring out the latent injurious meaning of the defendant's words, and such innuendo must distinctly aver that the words bear a specific actionable meaning.' "