B. I. SALINGER, Appellant, v. DES MOINES CAPITAL et al., Appellees.

JANUARY 17, 1928.

REHEARING DENIED SEPTEMBER 28, 1928.

*John McLennan* and *B. I. Salinger*, for appellant.

*Carr, Carr & Evans*, for appellees.

PER CURIAM.—The following opinion was written by the late Justice Vermilion, and is now adopted as the opinion of this court by a majority thereof.

The petition alleged and the answer, in effect, admitted the publication by the defendant of the article alleged by plaintiff to be libelous.

The material portion of the article is as follows:

"Justice Salinger Suggests Another Supreme Judge.

"Judge B. I. Salinger, who holds a seat on the supreme bench, advocates increasing the number of supreme judges. The number is seven at the present time, and Judge Salinger wants to make it eight. He says there is too much work to do. We do not know how the lawyers feel in regard to it, but we would think that each judge could review 125 cases per year. If this could be done there are judges enough.

"It is not generally known that when a litigant takes a case to the Supreme Court, he secures the judgment of one man only. He does not secure the opinion of the Supreme Court. He secures the opinion of one member of the Supreme Court. It seldom happens that a full bench considers a case. The papers in the case are handed out by the chief justice, and the subordinates take their separate jobs and go to work.

"Therefore, Justice Salinger moves to create another Supreme Court by appointing one man who will take his bunch of cases and review them.

"This system, while not generally known, is not popular with the layman. The average litigant thinks the Supreme Court ought to be a Supreme Court, and that when a man gets through with the Supreme Court he ought to feel that he has had the judgment of seven men."

The petition alleged that the article charged the plaintiff

with violating his duties as a judge of the Supreme Court, in that he and his fellow members decided causes therein single-handed, and that plaintiff was attempting to get an additional judge created, so that he might continue a system of avoiding the work he should do, by having one more judge to decide a part of the cases submitted, without consultation or co-opera-tion with the others. The petition further alleged that the publication was malicious and the matter of the article was used in a defamatory sense, and that the defendant was inspired by express malice and personal hatred of the plaintiff.

At the close of plaintiff's evidence, the court, on motion of the defendant, directed a verdict for the defendant. The grounds of the motion, briefly stated, were: (1) That the article, on its face and in the ordinary meaning of its language, did not charge plaintiff with wrongdoing, moral delinquency, or turpitude, or a crime, and was not defamatory or libelous; and (2) that plaintiff could not, by innuendo pleaded, make that libelous which was not libelous on its face.

In *Hughes v. Samuels Bros.*, 179 Iowa 1077, we said:

"Peculiar damages are required to be alleged only when the publication, with its attending facts and circumstances, is such that damages do not naturally arise from the publication. If the publication, with its attending facts and circumstances, is such that the court can legally presume that injury followed as a natural and inevitable consequence of the act complained of, then there is no occasion, in order to maintain an action, that the plaintiff allege or prove peculiar damages. If the nature and character of the publication, with its attending facts and circumstances, are such as to injuriously affect or detract from the reputation and standing of another, and, as a natural and proximate result, tend to bring him into public contempt, hatred, or ridicule, then it is libelous *per se*. If such injury can be said to be a natural proximate result or consequence of its publication, then the plaintiff is presumed to have been damaged, and there is no need of any allegation of peculiar damages. The extent of the damages is for the jury."

See, also, *Kluender v. Semann*, 203 Iowa 68.

In *Burghardt v. Scioto Sign Co.*, 191 Iowa 384, it is said:

"To constitute such libel [*per se*] it is not necessary that the language complained of should charge the plaintiff with crime or unchaste conduct. It is enough if it appear that the language used imputes to the plaintiff acts or qualities having a natural tendency to injure her in her business, trade, or profession, or to expose her to public contempt or condemnation."

In *Children v. Shinn,* 168 Iowa 531, 544, we said:

"If the publication be held to have had reference to plaintiff at all, it referred to his conduct as an officer, and, as we think, tended to impeach his ability, skill, or knowledge, and for the purpose of conveying the impression that he was unfit to be continued therein. Such publications are, on their face, actionable *per se.* *Vial v. Larson,* 132 Iowa 208; *Sanderson v. Caldwell,* 45 N. Y. 398; *Williams v. Davenport,* 42 Minn. 393; *Morasse v. Brochu,* 151 Mass. 567; *Spiering v. Andrae,* 45 Wis. 330; *Eviston v. Cramer,* 47 Wis. 659; *Van Tassel v. Capron,* 1 Denio (N. Y.) 250; *Gove v. Blethen,* 21 Minn. 80. The rule quite generally obtaining is that words written of one holding an office of profit, charging incapacity or want of integrity, or corruption in office, are libelous *per se,* because they render his tenure precarious, and are, therefore, a detriment from a pecuniary point of view. *Alexander v. Jenkins,* 1 Q. B. (1892) 800; *Sharpe v. Larson,* 67 Minn. 428."

See, also, *Sheibley v. Ashton,* 130 Iowa 195, where it is said that to accuse one holding a public office of being guilty of willful misconduct in connection therewith is libelous, and actionable *per se.*

In 36 Corpus Juris 1180 it is said:

"Also any language imputing want of integrity, a lack of due qualification, or a dereliction of duty to an officer or employee, is actionable *per se,* whether it is spoken or written."

In *Sheibley v. Ashton,* supra, we said:

"* * * if the publication is not libelous *per se* upon its face, it cannot be made so by innuendo. * * * The character of the publication as to being libelous or otherwise must be determined by giving to the subject-matter thereof, as a whole,

that meaning which naturally belongs to the language used. If the reasonable import of such language is to work defamation of the reputation of another by imputing to him a condition or acts or conduct such as that in common experience entail public hatred, contempt, or ridicule, or which, in the natural and ordinary course of things, operate to deprive him of the benefits of public confidence and social intercourse, the publication must be regarded as actionable *per se."*

An innuendo cannot extend the expressions in an alleged libel beyond their ordinary meaning. *Wallace v. Homestead Co.,* 117 Iowa 348; *Snyder v. Tribune Co.,* 161 Iowa 671. But where the words used are ambiguous, or admit of different applications, an innuendo may confine or direct them. *Wallace v. Homestead Co.,* supra. Where the words may fairly be capable of the defamatory meaning in which the plaintiff alleges they were used, they are actionable. *Morse v. Times-Republican Printing Co.,* 124 Iowa 707; *Jensen v. Damm,* 127 Iowa 555; *Charleson v. Russell,* 144 Iowa 38, 40.

It is settled by the case of *Fey v. King,* 194 Iowa 835, that it is not alone sufficient, to make a writing libelous, that it tends to provoke the one concerning whom it is published to wrath, or expose him to public ridicule or contempt, but that it must reach further, and reflect upon his integrity, his character, and his good name and standing in the community, and must injuriously affect him in this respect in the estimation of others.

Does the article in question come within these rules?

The statement that the plaintiff was advocating the creation of another Supreme Court judgeship because the court had too much work was clearly not libelous. This the plaintiff or any other citizen had a perfect right to do. Nor would the fact, as alleged, that the creation of another judge would tend to lighten the labor of the plaintiff as a member of the court make the article libelous.

We are of the opinion, however, that the statement in the publication that the decisions of the court were the judgment of one man only was fairly susceptible of the meaning and

intendment attributed to it in the innuendo that plaintiff was violating his duty as a member of the court. If so, that it was such a charge of dereliction of duty on the part of a public official as to convey the impression that he was unfit to be continued in office, and not only tended to expose him to public hatred, contempt, or ridicule, but reflected on his integrity, good name, and standing in the community, would seem to require no supporting argument. We think it was a question for the jury, under proper instructions, whether the language of the article would be understood by those reading it to impute to the plaintiff a violation of his official duty as a member of the Supreme Court. *Jensen v. Damm,* supra.

It is alleged in the petition, by way of innuendo, in respect to a further portion of the article, that it charged plaintiff with accepting sleeping accommodations from the state to which the law did not entitle him, and that this was a violation of good taste and self-respect. We think the article in this respect, as limited or confined by the pleaded innuendo, was not libelous. It is alleged to charge no more than a violation of good taste and self-respect on the part of the plaintiff. Such charge may have tended to provoke the plaintiff to wrath, or even to expose him to public contempt or ridicule; but a charge of violation of good taste and self-respect merely is not libelous, under the rule laid down in *Fey v. King,* supra.

No question of privilege was raised by the motion for a directed verdict, nor presented on this appeal.

For the reason indicated, the court was in error in sustaining the motion for a directed verdict, and the cause is— *Reversed and remanded.*