26918.   PIEDMONT COTTON MILLS *v.* JAMES.
26919.   GOODMAN *v.* JAMES.

DECIDED DECEMBER 5, 1938. REHEARING DENIED DECEMBER 17, 1938.

*Alston, Foster, Moise & Sibley,* for plaintiff in error.

*Burress & Dillard, David A. Pirkle Jr.,* contra.

STEPHENS, P. J.   T. J. James instituted a suit for libel against Piedmont Cotton Mills and R. W. Goodman.   The only allegations in the petition tending to show jurisdiction of the person of either of the defendants was that "this court has jurisdiction of said defendants and of the subject-matter of this suit."   It was alleged in the petition as amended, and as shown by exhibits attached thereto, that the plaintiff was a justice of the peace of the 1589 District G. M. Fulton County, Georgia, which embraces the city of Hapeville and surrounding territory; that in a suit on a written contract by the American Asbestos Products Company against Piedmont Cotton Mills, which was tried in the J. P. court in the 1589 District G. M., a judgment was rendered for the plaintiff for the amount sued for, and a fi. fa. was issued thereon and turned over to the constable of the court to be collected from the defendant, Piedmont Cotton Mills; that the constable, on February 17, 1937, presented the fi. fa. to Piedmont Cotton Mills for payment, and that the defendants, that is Piedmont Cotton Mills and R. W. Goodman, "issued" a check for payment thereof, and "on said check given by the defendant, Piedmont Cotton Mills, to said constable in payment of said fi. fa., the defendants herein wrote thereon the words 'Legalized steal American Asbestos Products Co. and J. P. court,'" that the check was made payable to the order of "T. J. James, J. P.," and was signed "Piedmont Cotton Mills by R. W. Goodman secretary;" that the constable "accepted said check of the defendant, Piedmont Cotton Mills, in payment of the fi. fa.," and "saw said libelous statement above quoted which was written on said check by said defendants."

It was further alleged that the quoted words constituted a libel against the plaintiff, T. J. James, in that they conveyed and were intended to convey the meaning that he had, under the cloak of his office as justice of the peace, assisted the American Asbestos Products Company, the plaintiff in the case tried before him, in com-

mitting a theft from the defendant, Piedmont Cotton Mills, by rendering a false and fraudulent judgment against the defendant, Piedmont Cotton Mills, and thereby to steal from the defendant, the Piedmont Cotton Mills, by collecting from it the judgment which had been rendered against it; further, that the words constituted a libel by the defendants against the plaintiff in that they conveyed and were intended to convey the meaning that he was a dishonest, fraudulent, and unjust person, and that he acted dishonestly and fraudulently in connection with the American Asbestos Products Company and for the purpose of defrauding the defendant, Piedmont Cotton Mills, by entering up a judgment against the defendant, Piedmont Cotton Mills; further, that the words constituted a libel in that they conveyed and were intended to convey the meaning that the plaintiff was and is a dishonest and unjust officer of the law, that he uses his office to perpetrate fraud, that he debased and desecrated his office by wilfully rendering a judgment against the defendant, Piedmont Cotton Mills, contrary to his oath of office; and, further, that the "said libelous words" above quoted were written on the check by the defendants with the intention to injure, humiliate, and embarrass the plaintiff as an individual and as an officer of the court. It was further alleged that the alleged libelous words were written maliciously, wilfully, wantonly, and intentionally to humiliate, embarrass, injure, and damage the plaintiff as an individual and as an officer of the court, and did so humiliate, embarrass, and injure him in both capacities.

It was further alleged that the plaintiff, T. J. James, had been for twenty-one years a justice of the peace in and for the alleged district, and had resided in Hapeville for thirty years, and that he is an honest, upright, and just man, and had such reputation in the city and in the surrounding country and wherever he was known; that he is a man of high moral character, and one that would not steal or defraud, and would not aid or abet any one in defrauding another or committing a theft, and at the time of the publication of the alleged libel he had such reputation in the city and community in which he lived and wherever he was known; that as justice of the peace in and for the alleged district he had always conducted the office as an upright, honest, just, efficient man, and according to his oath of office; and that he has and did enjoy such reputation as a justice of the peace in and for the al-

leged district at the time of the publication of the libel referred to. It was further alleged that the defendant, R. W. Goodman, "is secretary of the corporate defendant, Piedmont Cotton Mills, and as such is authorized by said corporate defendant to issue and sign checks in payment of its obligations." The plaintiff alleged that by reason of the facts alleged in the petition both defendants had injured and damaged him in the sum of $7500. He prayed for all damages sustained by reason of the alleged libelous publication, including punitive damages as compensation for his wounded feelings etc.

Each defendant separately demurred generally and specially to the petition. The demurrers were identical, and the judgments of the court overruling both demurrers, with the exception of one special demurrer which it is not necessary to refer to, were identical. While the defendants come to this court on separate bills of exception in which the judgments overruling the general and special demurrers are excepted to, this court, in view of the fact that the suit is brought in one petition against both defendants jointly and the separate demurrers and separate orders overruling the demurrers are identical, will dispose of the two cases brought on separate bills of exception as if they were one case. The demurrers will be referred to as one demurrer, and the orders of the court will be referred to as one order. The defendants demurred to the petition on the ground that it showed on its face that the court had no jurisdiction of either defendant nor had the court jurisdiction of the cause of action attempted to be set out. The defendants also demurred generally to the petition on the ground that no cause of action was set out against either defendant. Each defendant demurred to the petition on the ground that there appeared a misjoinder of parties and a misjoinder of actions, in that it was not alleged that there was any joint duty owed by the defendants to the plaintiff, and in that it was not alleged which of the defendants breached any joint duty to the plaintiff, and that no sufficient facts appeared to show a joint, or joint and several, cause of action. Each defendant specially demurred to the petition on the ground that it did not appear which defendant issued the check, or which defendant, if either, wrote the alleged libelous words on the check. Each defendant demurred to various paragraphs of the petition as containing irrelevant and immaterial matter, and as containing allegations which were mere conclusions.

It was alleged in paragraph 17 of the petition that the defendant R. W. Goodman was secretary of the Piedmont Cotton Mills, and as such was authorized by the Piedmont Cotton Mills to issue and sign checks in payment of its obligations. The defendants demurred specially to this paragraph on the ground that the allegations therein were irrelevant and immaterial and set forth no facts on which to predicate any liability by either defendant to the plaintiff. The only allegation in the petition tending to show jurisdiction over the persons of the defendants is the allegation that the court had jurisdiction of the defendants. While this is not an allegation as to the residence of the defendants as tending to show jurisdiction over them, it is an allegation by way of conclusion that the court had jurisdiction of the persons of the defendants. The demurrer was not on the ground that the petition failed to allege facts showing that the court had jurisdiction over the defendants, but was general on the ground that the petition showed on its face that the court had no jurisdiction of the defendants. The demurrer was not on the ground that the allegation in the petition as to jurisdiction over the defendants was a conclusion. The petition alleged that the court had jurisdiction of the defendants, and this allegation was good against the demurrer interposed. In so far as the petition alleged, as it did, that the check containing the alleged libelous words was signed by both defendants, and that the alleged libelous words which were written on the check were written by both defendants, the petition alleged a joint act of both defendants in the utterance of the alleged libel. In this respect there was no misjoinder of parties or causes of action. It is immaterial that the petition failed to show, as alleged in the demurrer, any joint duty owed by the defendants to the plaintiff, or which of the defendants breached any such duty, or in that the petition showed no facts sufficient to show a joint or joint and several cause of action. There was no demurrer to the petition on the ground that it failed to show how or in what manner the defendant Piedmont Cotton Mills, a corporation, signed the check or uttered the alleged libelous language contained on the check. Therefore the allegations in the petition that both defendants issued the check and thereby uttered the alleged libelous language was sufficient as against a general demurrer that the alleged libelous act was perpetrated by both defendants. It appears in the petition that both

defendants issued the check and both wrote the alleged libelous words. There is no merit in the demurrers on the ground that these allegations do not appear.

It appears from the allegations in paragraph 17 of the petition that the defendant Goodman who, it appears elsewhere, signed, as secretary for Piedmont Cotton Mills, the check containing the alleged libelous words which the defendant, Piedmont Cotton Mills, is alleged to have given, was secretary of Piedmont Cotton Mills, and that as such he was authorized by Piedmont Cotton Mills to issue and sign checks in payment of its obligations. It is a fact which is relevant and material as tending to show liability by the Piedmont Cotton Mills, through him as its agent, for his act in signing the check for the Piedmont Cotton Mills, when supplemented by the fact that he, at the time, was acting for Piedmont Cotton Mills and within the scope of his employment as its agent. While the allegation to this effect, as contained in paragraph 17 of the petition, might be defective in that there was a failure to allege that Goodman, in placing the alleged libelous words on the check, was, in so doing, acting within the scope of his authority as such agent, the allegations in this paragraph are not, as alleged in the demurrer thereto, irrelevant and immaterial in that they "set" out no facts on which to predicate any liability of the defendants, Piedmont Cotton Mills, or R. W. Goodman, to the plaintiff. It is a fact essential to such liability by Piedmont Cotton Mills. The demurrer was not on the ground that it was not alleged that the alleged agent at the time was acting within the scope of his authority as such agent.

The alleged libelous language was as follows: "Legalized steal American Asbestos Products Co. and J. P. Court." It is alleged that this constituted a libel of the plaintiff, the justice of the peace of that district. A libel is defined in the Code, § 105-701, as follows: "A libel is a false and malicious defamation of another, expressed in print, or writing, or pictures, or signs, tending to injure the reputation of an individual, and exposing him to public hatred, contempt, or ridicule." While the language may not charge a crime in the technical sense, it nevertheless contains an intimation that the J. P. court had committed a "steal." A steal means the taking of something from another wrongfully and without right. A person who commits a steal does something that is wrong and

reprehensible. A charge that a justice of the peace in rendering a money judgment in his court, where the judgment was afterward collected from the defendant, committed a "legalized steal," is a charge that he did something wrong and reprehensible, and unjustly deprived the defendant in his court of money under the semblance of legality and by the operation of the machinery of law. The alleged libelous words are susceptible of this meaning, and while they do not say so expressly, they may be shown to have such meaning by innuendo. "The office of an innuendo is to explain that which is of doubtful or ambiguous meaning in the language of the publication, . . when the language used is capable of being understood in a double sense . . the plaintiff, by making the proper allegations in his declaration, may, by an innuendo, aver the meaning with which he thinks it was published, and the jury may find whether the publication was made with that meaning or not." *Park* v. *Piedmont &c. Life Ins. Co.,* 51 *Ga.* 510, 513. The language used is clearly susceptible of the construction that, as alleged in the petition, it charged, and was intended to charge, and was so understood, that the plaintiff, who was a justice of the peace, had, under the cloak of his office as such, assisted the American Asbestos Products Company who was the plaintiff in a case tried before him, in committing a theft from the defendant, Piedmont Cotton Mills, by rendering a false and fraudulent judgment against this defendant, and causing the collection from the defendant of the judgment which had been rendered, and that the plaintiff, a justice of the peace, was a dishonest, fraudulent, and unjust person, and acted dishonestly and fraudulently and for the purpose of defrauding the defendant, Piedmont Cotton Mills, in rendering judgment against it, and was therefore a dishonest and unjust officer of the law and used his office to perpetrate fraud. The petition contained allegations to the effect that the charges against the plaintiff were false.

The publication that "whenever an occasion may offer to serve his fellow-partisans, he will yield to the temptation and the 'wavering balance will shake,'" is libelous. *Re Moore,* 63 N. C. 397. A publication which tends to impeach the integrity and honesty of jurors or judges in their office, and which denounces a verdict or judgment as infamous, is directed at the individuals and is libelous. Byers *v.* Martin, 2 Colo. 605 (25 Am. R. 755). It is libelous and

actionable per se to charge a judge with unfitness in office and improper conduct in trying cases. Robbins *v.* Treadway, 25 Ky. (2 J. J. Marshall), 540 (19 Am. D. 152). It is libelous per se to charge a justice of the peace with giving a false judgment. Gibbons *v.* Tartar, 37 Tenn. 644. A statement that supreme court decisions were one-man judgments was held libelous. Salinger *v.* Des Moines Capitol, 206 Iowa, 592 (217 N. W. 555). See Odgers on Libel & Slander (5th ed.), 25; Newell on Libel & Slander (4th ed.), 166; 36 C. J. 1187, 1188.

The language, in making the charges against the plaintiff by innuendo, as alleged in the petition, tended to injure the reputation of the plaintiff as an individual in the performance of the duties of his office as justice of the peace, and was such as to expose him to public hatred, contempt, or ridicule. It being alleged that the language was written maliciously, wilfully, and with the intention to humiliate, embarrass, and injure and damage the plaintiff as an individual, and as an officer of the court, and did so humiliate, embarrass, and injure him, the language with the innuendo constituted a libel. The language as charged under the innuendo is libelous per se, and is actionable without proof of special damage.

"The publication of the libelous matter is essential to recovery." Code, § 105-701. There is a publication of a libel where it is made known to a single person other than the plaintiff. Hedgepeth *v.* Coleman, 183 N. C. 309 (111 S. E. 517, 24 A. L. R. 232) ; Newell on Libel & Slander (4th ed.), 218-236; Odgers on Libel & Slander (5th ed.), 158-167. It was alleged in the petition that the check containing the alleged libelous words was given by the defendant, Piedmont Cotton Mills, to the constable of the Hapeville District, in payment of the fi. fa. which had been issued against the defendant, Piedmont Cotton Mills, and that the constable saw the alleged libelous statement written on the check and exhibited it to another person. This allegation shows a publication of the libel by the defendant, Piedmont Cotton Mills. A jury would be authorized to find that the words were libelous as alleged and by innuendo conveyed the meaning alleged. The petition set out a cause of action against the defendant, Piedmont Cotton Mills.

It does not appear anywhere in the petition that the other defendant, R. W. Goodman, delivered to the constable or to any one else the check containing the libelous words. There is no allega-

tion in the petition that the defendant, R. W. Goodman, made publication of the libel. By reason of this omission the petition failed to set out a cause of action against the defendant, R. W. Goodman.

The court did not err in overruling the general and special demurrers of Piedmont Cotton Mills to the petition, but erred in overruling the general demurrer of R. W. Goodman to the petition.

In the case of T. J. James v. Piedmont Cotton Mills the judgment overruling the demurrer to the petition is *affirmed.* In the case of T. J. James v. R. W. Goodman the judgment overruling the demurrer is *reversed. Sutton and Felton, JJ., concur.*

SUTTON, J. I concur in the judgment of affirmance in the case of Piedmont Cotton Mills v. James, and dissent from the judgment of reversal in the case of Goodman v. James, for the reason that I am of the opinion that the allegations of the petition set out a cause of action against both defendants.