# IN THE SUPREME COURT OF IOWA

No. 78 / 04-0987

Filed March 9, 2007

**TODD M. STEVENS**,

    Appellant,

vs.

**IOWA NEWSPAPERS, INC., SUSAN HARMAN** and **ERIK BROOKS**,

    Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Story County, William J. Pattinson, Judge.

Plaintiff in libel case appeals from summary judgment for defendants.

**COURT OF APPEALS DECISION AFFIRMED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**

Theodore F. Sporer of Sporer & Ilic, P.C., Des Moines, for appellant.

Michael C. Cox of Koley Jessen, P.C., Omaha, Nebraska, for appellees.

**LARSON, Justice.**

Todd Stevens brought a libel suit against Iowa Newspapers, Inc., as owner, and Susan Harman and Erik Brooks, reporter and editor, respectively, of the *Ames Tribune.* The district court granted the defendants' motion for summary judgment, and the plaintiff appealed. The court of appeals affirmed in part and reversed in part. We granted further review and now affirm the decision of the court of appeals, reverse the judgment of the district court, and remand.

## I. *Facts and Prior Proceedings.*

The facts, as produced in the summary judgment record, are undisputed. In November 1998 Todd Stevens orally agreed with Iowa Newspapers to provide weekly sports columns to the *Tribune* to be paid on a per-column basis. He was not an employee of the newspaper, but was considered a freelance journalist subject to the *Tribune*'s editorial policies and decisions.

In June 2002 Susan Harman, the sports section editor, wrote and published a column about the resignation of Iowa State University's associate athletic director, Elaine Hieber. Stevens disagreed with the tone of Harman's article, believing it was too complimentary toward the resigning employee, and drafted his own column expressing his viewpoint. After reviewing Stevens' proffered article, Harman and David Kraemer, the *Tribune*'s managing editor, decided the column would not be published without further discussion with Stevens because of the column's negative comments and implications concerning the quality of the newspaper's investigation and reporting of the incident.

Stevens redrafted his column, toning down his attack on the newspaper's investigation, but Harman and Kraemer still refused to publish

it. In the meantime, Stevens read his column on the air on a local sports radio talk program.

Stevens advised Kraemer that he would no longer write for the *Tribune* and asked to write a "farewell" column. Kraemer consented, and the column was published in the *Tribune* on June 10, 2002, under the heading "Point Counterpoint—Columnist Opts Out of the *Tribune*." Directly adjacent to Stevens' column was a response authored by Harman. Three comments in Harman's response became the basis of Stevens' libel action: (1) That Stevens "in fact rarely attended events upon which he wrote columns"; (2) that Stevens' original column on Hieber's resignation "contained numerous factual errors and unsubstantiated claims"; and (3) that Stevens' redraft of his Hieber resignation column "continued to include fatal factual errors and near libelous characterizations."

Stevens sued on a theory of express libel, and the district court found that Stevens also had possibly pled a theory of defamation by implication. Even though the district court was not convinced that defamation by implication existed in Iowa law, it considered that possibility in its ruling.

We begin the discussion of the merits of this appeal by first determining the plaintiff's status—an important consideration in defamation cases. For defamation purposes, a person becomes a public figure in two ways.

> In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, 94 S. Ct. 2997, 3013, 41 L. Ed. 2d 789, 812 (1974). Stevens apparently admits, for libel purposes, that he is a public figure.

Stevens, as a public figure, had the burden to show that a reasonable jury could find by clear and convincing evidence that (1) the challenged statements in Harman's column were false and (2) Harman made the statements with "actual malice." *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S. Ct. 710, 726, 11 L. Ed. 2d 686, 706 (1964); *Carr v. Bankers Trust Co.*, 546 N.W.2d 901, 904 (Iowa 1996). The district court ruled that Stevens failed to meet this test and granted the defendants' motion for summary judgment.

The court of appeals affirmed the district court's findings on statements 2 and 3 (quoted above), reversed on statement 1 (that Stevens rarely attended the events upon which he wrote columns), and remanded for trial. The court of appeals, noting a split of authorities on the issue, concluded Iowa would recognize a claim for defamation by implication.

## II. *Review of Summary Judgment.*

The standard of review for summary judgment cases is well settled. We review summary judgment motions for correction of errors at law. *Carr*, 546 N.W.2d at 903. Summary judgment is appropriate only when the entire record demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* We review the evidence in the light most favorable to the nonmoving party. *Mason v. Vision Iowa Bd.*, 700 N.W.2d 349, 353 (Iowa 2005).

A party resisting a motion for summary judgment cannot rely on the mere assertions in his pleadings but must come forward with evidence to demonstrate that a genuine issue of fact is presented. The record on summary judgment includes the pleadings, depositions, affidavits, and

exhibits presented. *Carr*, 546 N.W.2d at 903. Unique rules apply in defamation cases because First Amendment rights are implicated. *Id.* at 904 (holding that the court "must examine the evidence to determine if a rational fact finder could conclude that malice had been established by clear-and-convincing evidence").

### III. *Defamation by Implication.*

The statements at issue, i.e., that Stevens rarely attended the events he covered; that his original column contained numerous factual errors and unsubstantiated claims; and that Stevens' redraft continued to include factual errors and "near" libelous characterizations, were all basically true. It is only when the statements are given the spin that Stevens attributes to them that they may be considered libelous. This raises the initial question of whether we recognize defamation by implication.[1]

Defamation by implication arises, not from what is stated, but from what is implied when a defendant

> (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct.

Dan B. Dobbs, *Prosser & Keeton on the Law of Torts* § 116, at 117 (Supp. 1988). Iowa case law has not expressly adopted the principle of defamation by implication; however, analogous cases suggest that such a cause of action would be recognized. *See, e.g.*, *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996) ("In determining what the third person understands, the defamatory statement must be viewed in the context of the surrounding

---

[1]We reject the defendants' argument that Stevens may not maintain a suit based on this theory because he failed to expressly plead it; it is clear under notice pleading that a specific theory of a claim need not be alleged. *See, e.g.*, *Soike v. Evan Matthews & Co.*, 302 N.W.2d 841, 842 (Iowa 1981).

circumstances and within the entire communication."); *Haas v. Evening Democrat Co.*, 252 Iowa 517, 528, 107 N.W.2d 444, 451 (1961) ("An innuendo, in the law of slander and libel, is only a word of explanation, an attempt to give a meaning to what was actually expressed."); *Salinger v. Des Moines Capital*, 206 Iowa 592, 596-97, 217 N.W 555, 557 (1928) (statement that the decisions of the Iowa Supreme Court were the judgment of one man was libelous as it was "fairly susceptible of the meaning and intendment, attributed to it in the innuendo, that plaintiff was violating his duty as a member of the court"); *Kelly v. Iowa State Educ. Ass'n*, 372 N.W.2d 288, 295-96 (Iowa Ct. App. 1985) (statement in question implies that the state educational administrator was not competent; libel action was permitted based on this implication); *see also* Restatement (Second) of Torts § 563 cmt. *c*, at 163 (1965) ("The defamatory imputation may be made by innuendo, by figure of speech, by expressions of belief, by allusion or by irony or satire.").

We now expressly adopt the principle of defamation by implication. Otherwise, by a careful choice of words in juxtaposition of statements in a publication, a potential defendant may make statements that are true yet just as damaging as if they were actually false. Whether we adopt the theory of implied defamation in suits against public officials or public figures such as Stevens, however, presents a closer question. As the Supreme Court has observed, "elected public official[s] . . . traditionally have been subject to special rules of libel law." *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 144, 87 S. Ct. 1975, 1986, 18 L. Ed. 2d 1094, 1105 (1967). In fact, some courts have been reluctant to permit an action for defamation by implication in public-figure or public-official cases. *See, e.g., Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1432 (8th Cir. 1989), *cert. denied*, 493 U.S. 1036, *reh'g denied*, 494 U.S. 1013 (1990) (suit for implied defamation

by FBI agent; court refused to recognize such suits); *Diesen v. Hessburg*, 455 N.W.2d 446, 452 (Minn. 1990) ("[W]e hold an allegedly false implication arising out of true statements is generally not actionable in defamation by a public official . . . ."); *De Falco v. Anderson*, 506 A.2d 1280, 1284 (N.J. 1986) (There can be no libel by innuendo by public figures when the facts in the challenged communication are true.); *see also* 16B C.J.S. *Constitutional Law* § 876, at 170 (2005) ("As a general rule, all truthful statements concerning public officials are constitutionally protected even if a false implication may be drawn by the public, the defense of truth as against a charge of defamation being constitutionally required." (Footnotes omitted.)); Robert D. Sack, *Libel, Slander, and Related Problems* § 5.5.1, at 5064 (3d ed. 1999) ("[I]mplication perceived in a statement but not intended by the speaker cannot be actionable in public official or public figure cases.").

Some jurisdictions, on the other hand, have not hesitated in holding that defamation by implication is a permissible claim for public figure plaintiffs. *See, e.g., Toney v. WCCO Tel.*, 85 F.3d 383, 393 (8th Cir.), *cert. denied*, 479 U.S. 883 (1986) (concluding that Minnesota would recognize defamation by implication); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993) (plaintiff was a public figure, yet the court noted that defamatory meaning may be communicated by direct reference or by implication); *Saenz v. Playboy Enter., Inc.*, 841 F.2d 1309, 1314 (7th Cir. 1988) (concluding that nothing in Supreme Court cases justifies denying a public official a cause of action premised on defamatory innuendo); *Thomas v. Los Angeles Times Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1012 (C.D. Cal. 2002), *aff'd*, 30 Media L. Rep. 2438 (9th Cir. 2002), *cert. denied*, 537 U.S. 1172 (2003) (court noted that neither California nor the ninth circuit had ever held that being a public figure is a bar to a defamation by implication claim).

As one writer has noted,

> [d]isallowing defamation by implication ignores the reality of human discourse. Communication, rarely composed of transparent assertions, is a nexus of suggestions, cues, allusions, presumptions and intimations. What speech leaves unsaid is often more potent than what it makes explicit: "it is the thought conveyed, not the words, that does the harm."

Nicole Alexandra LaBarbera, *The Art of Insinuation: Defamation by Implication*, 58 Fordham L. Rev. 677, 701 (1990) [hereafter LaBarbera] (quoting *Turner v. Brien*, 184 Iowa 320, 326, 167 N.W. 584, 586 (1918)). Further, as LaBarbera notes, denying a public figure the right of redress in the face of implied defamation is unfair.

> Precluding a plaintiff from recovering for defamation that is cleverly couched in implication is inequitable. It rewards a defendant for having the foresight or literary facility to secrete a "classic and coolly-crafted libel" in the overtones of a facially neutral statement. It may provide a loophole through which media defendants can escape liability for "high-profile" defamatory stories by insinuating what they may not state.

*Id.* The seventh circuit has stated:

> [W]e believe that an official should not be allowed to transform governmental criticism into personal defamation where none exists. We also do not believe, however, that a publisher may, without impediment of law, trammel a public official by "surreptitious and insidious implication" under the pretense of governmental critique. To deny a public official the opportunity to demonstrate the defamatory innuendo of a publication, even one critical of governmental conduct, is to open Pandora's Box from which countless evils may spring. A legal fiction denying the existence of clearly discernable, though not explicit charges, exposes public officials to baseless accusations and public mistrust while promoting an undisciplined brand of journalism both unproductive to society and, as we see it, unprotected by constitutional considerations.

*Saenz*, 841 F.2d at 1317. Also,

> [s]uch a draconian approach [denying cause of action for defamation by implication] would invite a publisher who deliberately seeks to harm the reputation of a public person to manipulate statements purposefully or to omit critical facts

with the design of implying a false, defamatory meaning. A literal and accurate report of specific facts could be used to destroy reputation deliberately. In other words, a form of calculated falsehood would be placed beyond the reach of the law of defamation.

C. Thomas Dienes & Lee Levine, *Implied Libel, Defamatory Meaning, and State of Mind: The Promise of* New York Times Co. v. Sullivan, 78 Iowa L. Rev. 237, 308 (1993).

We conclude that, despite Stevens' status as a public figure, he may maintain a suit based on alleged defamation by implication. Whether he has sustained his burden of showing a genuine issue of material fact, for summary judgment purposes, remains at issue.

### IV. *The Merits of the Plaintiff's Claim.*

We noted in *Carr* that *New York Times Co. v. Sullivan* "significantly restricted the power of courts to grant damage awards in defamation cases brought by public officials." *Carr,* 546 N.W.2d at 903-04. As the Supreme Court said in *New York Times*:

> The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"— that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

376 U.S. at 279-80, 84 S. Ct. at 726, 11 L. Ed. 2d at 706. Malice must be shown with "convincing clarity" or clear and convincing evidence. *Id.* at 285-86, 84 S. Ct. at 728-29, 11 L. Ed. 2d at 710. (While *New York Times* involved a public official, its holding has been extended to cover public-figure plaintiffs as well. *Curtis Publ'g Co.*, 388 U.S. at 155, 87 S. Ct. at 1992, 18 L. Ed. 2d at 1111).

Under *New York Times* a plaintiff's proof that the statement in question is false is insufficient to establish defamation. In addition to showing falsity, a plaintiff must show actual malice, i.e., the statement was

made with knowledge that it was false or with reckless disregard as to whether it was true or false. *Carr*, 546 N.W.2d at 904. Reckless disregard means a "high degree of awareness of their probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S. Ct. 209, 216, 13 L. Ed. 2d 125, 134 (1964).

The *New York Times* analysis requires a plaintiff resisting a motion for summary judgment to do more than show a genuine issue of material fact; he must produce evidence from which a fact finder could reasonably find malice by clear and convincing evidence. As the Court stated in *Anderson v. Liberty Lobby, Inc.*,

> where the *New York Times* "clear and convincing" evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant. Thus, where the factual dispute concerns actual malice, clearly a material issue in a *New York Times* case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.

477 U.S. 242, 255-56, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202, 216 (1986).

It is for the court to determine whether the defendants' words were capable of a defamatory meaning and for the jury to determine whether they actually had that effect on the reader. According to the Restatement,

> (1) The court determines
>
>  (a) whether a communication is capable of bearing a particular meaning, and
>
>  (b) whether that meaning is defamatory.
>
> (2) The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient.

Restatement (Second) of Torts § 614, at 311 (1965).

The burden of showing that a communication is defamatory in character is substantial. The Supreme Court has stated:

> A "reckless disregard" for the truth [under the *New York Times*] requires more than a departure from reasonably prudent conduct. "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." The standard is a subjective one—there must be sufficient evidence to permit the conclusion that the defendant actually had a "high degree of awareness of . . . probable falsity." As a result, failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard.

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S. Ct. 2678, 2696, 105 L. Ed. 2d 562, 589 (1989) (citations omitted). "Actual malice" under the *New York Times*' analysis is not satisfied merely through a showing of ill will or " 'malice' in the ordinary sense of the term." *Id.* at 666, 109 S. Ct. at 2685, 105 L. Ed. 2d at 576.

**V.  *Application of Legal Principles.***

Keeping in mind the principles just discussed, we review the plaintiff's allegations of libel as supported by his resistance to the summary judgment motion.

A. *The defendant's statements regarding Stevens' failure to attend events.* Stevens claims that Harman defamed him by writing that Stevens "rarely attended events upon which he wrote columns." This was literally true; Stevens admitted he attended only approximately eighteen percent of the events about which he expressed opinions. However, as defendant Harman admitted in her deposition, personal attendance at sporting events is not required by professional standards for a sports opinion, as opposed to a news story. Stevens contends that the statement about his lack of personal attendance implied that he fabricated the columns he wrote. Such a suggestion, he claims, is tantamount to stating that he was untruthful.

As we have noted, the initial decision as to whether a statement is capable of bearing a defamatory meaning is for the court to decide, and the jury determines whether a communication, if capable of a defamatory meaning, was so understood by the reader. In determining whether a genuine issue of fact is generated on the question of malice or reckless disregard for the truth under the *New York Times* standard,

> the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.

*Anderson*, 477 U.S. at 255-56, 106 S. Ct. at 2514, 91 L. Ed. 2d at 216.

The article stated that Stevens rarely attended events about which he wrote, without revealing to the reader what defendant Harman knew—that personal attendance was not required by professional standards. As the Supreme Court said in *Harte-Hanks*, "[a]lthough failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category." 491 U.S. at 692, 109 S. Ct. at 2698, 105 L. Ed. 2d at 591 (citation omitted). When the evidence in the summary judgment record is viewed in the light most favorable to the resisting party, we conclude that a reasonable jury could find by clear and convincing evidence that this statement was false in its implication and was made with reckless disregard for the truth under the *New York Times* standard. We therefore affirm the court of appeals and reverse the district court on this issue.

B. *Other statements by the defendants.* The defendants' column also stated that Stevens' article contained "numerous factual errors" and contained "near libelous characterizations." Harman's statement that Stevens' article contained numerous factual errors was based in part on Stevens' statement that the athletic director, Max Urick, had not hired

13

Elaine Hieber. However, deposition testimony, including testimony from Urick himself, uniformly showed that Urick had, in fact, hired Hieber. This statement by Harman in her article (that Stevens' account of the issue was factually incorrect) was true. Another "factual error" to which the Harman article referred was Stevens' suggestion that key coaches at Iowa State had not been contacted regarding the Hieber matter. The undisputed evidence was that this was not true; Harman had indeed sought comment, though unsuccessfully, from one of them. Again, the defendants' observation that Stevens' column contained factual errors was true.

Because there were, in fact, factual errors in the Stevens article, the *Tribune* statements to that effect were accurate. Further, there was no evidence that even impliedly suggested that facts were withheld in the *Tribune* article (as in the *Tribune*'s statement about Stevens not attending events about which he wrote) that could make the "factual errors" statement libelous.

The *Tribune* article also characterized Stevens' statements as "near libelous characterizations." We agree with the district court and the court of appeals that the "*near* libelous" statement is so nebulous it is incapable, as a matter of law, of bearing a defamatory meaning. We therefore affirm on that issue. We affirm the court of appeals and reverse the district court as to its ruling on statement 1, and remand for trial on that issue.

**COURT OF APPEALS DECISION AFFIRMED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**

All justices concur except Hecht and Appel, JJ., who take no part.