# IN THE COURT OF APPEALS OF IOWA

No. 15-0675
Filed February 24, 2016

**PHILLIP L. LUBBERS, TRUSTEE
OF THE PHILLIP L. LUBBERS
LIVING TRUST,**
        Plaintiff-Appellant,

**vs.**

**MDM PORK, INC., AN IOWA
CORPORATION, GALEN MARS,
LYLE MARS, and RODNEY DEBOER,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Sioux County, Jeffrey L. Poulson,

Judge.

        The Phillip L. Lubbers Living Trust appeals the district court's grant of

summary judgment to MDM Pork, Inc.  **REVERSED AND REMANDED.**


        William K. Klinker of Smith, Grigg, Shea & Klinker, P.C., Primghar, for

appellant.

        Jeff W. Wright and Joel D. Vos of Heidman Law Firm, L.L.P., Sioux City,

for appellees.


        Considered by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**BOWER, Judge.**

The Phillip L. Lubbers Living Trust (Trust) appeals the district court's grant of summary judgment to MDM Pork, Inc (MDM). The Trust claims the district court erred in determining the parol evidence rule prohibited the introduction of an oral contract concerning the disposal of manure, in ruling the written contract does not contain an enforceable agreement concerning the manure, and in ruling insufficient facts existed to establish fraudulent misrepresentation.

## I.    BACKGROUND FACTS AND PROCEEDINGS

Ray Lubbers was the owner of eighty acres of farm ground located in Sioux County, Iowa. MDM was a corporation owned by Galen Mars, Lyle Mars, and Rodney De Boer, and was in the business of raising hogs. In 2007, MDM decided to build a hog confinement facility in Sioux County. Mars contacted Paul Lubbers, Ray Lubbers's son, about purchasing some land to use for the facility. Paul acted on behalf of Ray during the negotiation and sale.

The parties executed a Real Estate Purchase Agreement, prepared by Mars, on July 13, 2007. The agreement provided, in relevant part:

> A.    Seller is the owner of the following legally described property situated in: approx. 1/2 acres in the N/E corner of the North 1/2 of the S/E 1/4 of Section 11 in HOLLAND Twp., DT-95-N, R-44-W, Sioux County, Ia.
> > Subject only to easements, restrictions and covenants of record (collectively referred to as the "Property");
> B.    Buyer desires to purchase from Seller and Seller desires to sell to Buyer the Property;
> C.    Buyer and Seller desire to enter into a manure spreading easement over the agreed upon easement (separate agreement between Seller and Buyer); and
> D.    Buyer and Seller desire to set forth the obligations, restrictions, limitations, and conditions upon which the Property will be conveyed by Seller to Buyer.

. . . .

1.      Sale of Property.  Seller agrees to sell and convey to Buyer, and Buyer agrees to purchase from Seller, for the Purchase Price set forth below and on the terms and conditions set forth in this Agreement, the Property.  For purposes of this Agreement, Property shall be deemed to mean, on a collective basis: (a) the parcel of land described above (the "Land"), together with all rights, easements and interests appurtenant thereto; (b) all improvements located on the Land, if any.

2.      Purchase Price.  Seller, in consideration of the mutual covenants and agreements contained herein, agrees to sell to Buyer and Buyer, in consideration of the mutual covenants and agreements contained herein, agrees to purchase the Property from Seller and provide the necessary manure easement for the sum of 6000 per acre excluding any right-of-way as confirmed by the survey (the "Purchase Price").  The Purchase Price shall be paid by Buyer to Seller, in good and immediately available funds by wire transfer or cashier's check, at the time of Closing.

. . . .

22.     Entire Agreement.  This Agreement contains the entire agreement between the parties regarding the Property and supersedes all prior agreements, whether written or oral, between the parties regarding the same subject.  This Agreement may only be modified by subsequent written agreement signed by the party to be charged.

The real estate closing occurred in August 2007.  MDM paid $15,000 ($6000 per acre) and received a warranty deed for the 2.5 acre parcel; the deed was recorded that same month.  MDM then constructed a hog confinement facility, which was completed in early 2008.  Ray rented the remainder of the eighty acres, adjoining the hog confinement, to his son Paul.  After Ray's death, this property was conveyed to Ray's children and ultimately placed in the Phillip L. Lubbers living trust.

From 2008 through 2011, pursuant to an oral agreement between Paul and MDM, Paul received the manure produced by the hog confinement at no cost.

In 2012, the members of MDM decided to dissolve the corporation and sell its assets including the land and hog confinement facility. MDM first offered the property to Paul, who declined. MDM then sold the property to Randy Winterfeld. The real estate contract between MDM and Winterfeld contained an addendum stating: "Buyer [Winterfeld] understands for the remainder of 2012 Paul Lubbers is entitled to the manure in the hog facility located on the property and buyer agrees to provide Paul Lubbers reasonable access to retrieve the manure." Winterfeld allowed Paul to remove the manure in 2012 without payment. In 2013, Winterfeld no longer allowed Paul to pump manure from the facility without payment.

The Trust filed the present suit in November 2013 claiming MDM breached the Real Estate Purchase Agreement, MDM breached its oral contract to provide an easement for manure access, and MDM made a fraudulent representation. MDM filed a motion for summary judgment asking the district court to dismiss the Trust's petition. The district court entered an order granting summary judgment on the written real estate agreement and fraudulent misrepresentation claims. On March 19, 2015, the court overruled MDM's motion on the oral contract claim. The court reasoned:

> Here, Plaintiff has alleged facts that would be sufficient to allow a factfinder to find that the parties partly performed an easement to which they had orally agreed. It is undisputed that MDM supplied manure to Plaintiff between 2008 and 2012. . . . From this, a factfinder could conclude that Defendant had granted Plaintiff an easement to obtain manure from the hog confinement on Defendants' property (i.e., Plaintiff would have the dominant estate and Defendants would have the servient estate). The factfinder could also conclude that "the vendee [i.e., Plaintiff], with the actual or implied consent of the vendor [i.e., Defendants], has

taken and held possession of the premises under and by virtue of the contract . . . ." Iowa Code § 622.33.5 [(2013)]. Plaintiff's easement thus falls within the part performance exception to the statute of frauds; section 622.32 will not bar evidence of such an oral agreement.

Additionally, a factfinder could conclude that such an easement was to last for the life of the hog confinement facility. Plaintiff sold roughly 2.5 acres of Sioux County farm land to the Defendants for the price of $6,000 an acre. A factfinder could conclude that this is a low price for Sioux County farm land, implying that Defendants would be giving Plaintiffs some additional consideration for the deal, in the form of a manure easement. The Real Estate Purchase Agreement expressly allowed for the creation of such an agreement, since it stated that "Buyer and Seller desire to enter into a manure spreading easement over the agreed upon easement (separate agreement between Seller and Buyer); . . . ."

Subsequently, MDM filed a motion in limine (its second) requesting the exclusion of all evidence relating to the oral contract concerning the easement due to the integration clause in the Real Estate Purchase Agreement. MDM also claimed the Trust's requested damages were speculative. MDM also filed a motion for further findings and reconsideration of the summary judgment ruling.

After a hearing on the merits, the district court entered an amended order granting the motion for summary judgment. The court noted its previous misunderstanding of the Trust's claim: "The Court now finds that Plaintiff is not, in fact, arguing that he had this kind of an easement arrangement. Rather, Plaintiff argues that he and Defendants entered into an oral contract (not an easement) to supply Plaintiff with manure for the life of the facility." The court found the statute of frauds did not bar evidence of the alleged oral agreement. However, the court found the real estate purchase agreement between MDM and the Trust was a fully integrated contract and therefore the Trust was barred from presenting evidence of a prior or contemporaneous manure agreement.

The Trust appeals.

## II.   STANDARD OF REVIEW

We review rulings on motions for summary judgment for the correction of errors at law. *City of Cedar Rapids v. James Props., Inc.*, 701 N.W.2d 673, 675 (Iowa 2005). "Summary judgment is appropriate only when the entire record demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007). A genuine issue of material fact exists if reasonable minds can differ on how an issue should be resolved. *Seneca Waste Sols., Inc. v. Sheaffer Mfg. Co.*, 791 N.W.2d 407, 411 (Iowa 2010). We examine the record in the light most favorable to the nonmoving party and draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact. *Mason v. Vision Iowa Bd.*, 700 N.W.2d 349, 353 (Iowa 2005). "A party resisting a motion for summary judgment cannot rely on the mere assertions in [her] pleadings but must come forward with evidence to demonstrate that a genuine issue of fact is presented." *Stevens*, 728 N.W.2d at 827.

## III.   MERITS

### A.   Oral Contract

The Trust claims the Real Estate Purchase Agreement provided a separate oral arrangement regarding the manure. This oral agreement was conceived prior to, and at the time of, the creation of the real estate contract and the agreement granted the Trust the right to the manure from the confinement

facility. The Trust notes circumstantial and extrinsic evidence demonstrates the integration clause in the real estate purchase agreement was not meant to be a complete expression of the agreement between the parties.

"When an agreement is fully integrated, the parol-evidence rule forbids the use of extrinsic evidence introduced solely to vary, add to, or subtract from the agreement." *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 85 (Iowa 2011). An agreement is fully integrated "when the parties adopt a writing or writings as the final and complete expression of their agreement." *Id.* The presence of an integration clause, while considered, is only one factor used in determining if the contract is integrated. *See id.* "[E]xtrinsic evidence may be admitted to show that a writing is not an integrated agreement, not completely clear and unambiguous as to the subject in dispute, or ambiguous with respect to the subject of the lawsuit." *Kroblin v. RDR Motels, Inc.*, 347 N.W.2d 430, 433 (Iowa 1984).

However, the parol-evidence rule "does not come into play until by interpretation the meaning of the writing is ascertained, and, as an aid to interpretation, extrinsic evidence is admissible which sheds light on the situation of the parties, antecedent negotiations, attendant circumstances, and the objects the parties were striving to attain." *Hamilton v. Wosepka*, 154 N.W.2d 164, 168 (Iowa 1967). The parol evidence rule should not be invoked to prevent a litigant the chance to prove a writing does not, in fact, represent what the parties understood to be their agreement. *First Interstate Equip. Leasing of Iowa, Inc. v. Fielder*, 449 N.W.2d 100, 103 (Iowa Ct. App. 1989).

Although the Real Estate Purchase Agreement contained an integration clause, given ambiguity in that agreement, the Trust should not be barred from introducing evidence concerning the oral agreement for the purpose of demonstrating the Real Estate Purchase Agreement was representative of the parties' agreement. Based on the parties' past conduct (MDM allowing the manure to be removed for years at no cost), evidence of other agreements not included in the purchase agreement (attorney fees and surveyor fees), MDM's representatives' claimed lack of knowledge on why Paul was allowed to remove manure for years at no cost, and the ambiguous manure easement language in the purchase agreement, we believe material questions of fact exist regarding the oral agreement between the parties. We find MDM's motion for summary judgment on the alleged oral contract was improperly granted.

### B. Written Manure Agreement

The Trust claims the district court erred in ruling the purchase agreement did not contain an enforceable contract regarding the manure from the facility. The Trust claims the language in the agreement requiring MDM to "purchase the property from the seller and provide the necessary manure easement" meant MDM had to furnish the Trust with a manure easement.

The district court found the references in the contract were merely an "agreement to form an agreement regarding the manure" and were not enforceable. The court reasoned:

> [T]he Real Estate Purchase Agreement cannot be said to contain anything more than an agreement to agree. Recital "C," for example, provides that "Buyer and Seller desire to enter into a manure spreading easement over the agreed upon easement

(separate agreement between Seller and Buyer); . . . .").  This language implies that the parties wanted to enter into an agreement sometime in the future, i.e., that the parties agreed to make an agreement regarding manure.  And indeed, nowhere does the Real Estate Purchase Agreement establish a duty on the part of Defendants to provide manure.  The Agreement is thus not an enforceable contract for the provision of manure.

We agree with the district court's reasoning.  An agreement to agree to enter into a contract is of no effect unless the parties have agreed upon all of the terms and conditions of the contract and nothing is left to future negotiation. *Scott v. Grinnell Mut. Reins. Co.*, 653 N.W.2d 556, 562 (Iowa 2002).  We find the district court did not err in granting MDM's motion on the issue of the written contract.

### C.      Fraudulent Misrepresentation

The Trust claims the district court erred in finding it failed to present sufficient evidence to sustain a claim for fraudulent misrepresentation.

To sustain a claim for fraudulent misrepresentation, the Trust "has the burden of proving the following elements: 1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damage.  These elements must be established by a preponderance of clear, satisfactory, and convincing proof."   *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 687 (Iowa 2010) (citations omitted).

In granting MDM's motion for this issue, the court reasoned:

> Here, the Court has not seen sufficient facts to allow Plaintiff's fraudulent misrepresentation claim to survive a motion for summary judgment.  Plaintiff has argued that "Defendants represented . . . that as part of the consideration for the purpose of the acreage site, the seller would receive all manure generated by the confinement upon the acreage site for an unlimited period of

time." Plaintiff has additionally stated that "Defendants knew that said representations were false." However, Plaintiff has not set forth any facts that would allow a factfinder to make such a conclusion. The only facts which Plaintiff has set forward would allow a factfinder to conclude that Defendants decided to stop giving manure to the Plaintiff *years* after Defendants allegedly represented that they would do so: Paul Lubbers contends that "Galen Mars did not remind [him] on May 14, 2012, that there was no manure easement"; that "MDM Pork was not clear with [him] that it wanted to hook [him] up with a new owner" after MDM was seeking to sell the confinement; that "nobody ever said anything about [his] not receiving the manure" during a meeting held after Winterfeld was already in the picture; that DeBoer and Mars "told [him] they wanted [him] to get the manure" during a 2012 meeting; that he "had several conversations with Galen Mars about the manure prior and subsequent to the execution of the contract in which [he] unequivocably [sic] stated that the sale price for the 2 1/2 acres of farmland was $6,000.00 per acre plus receipt of the manure at no cost"; and that "Galen Mars did approach [him] in May of 2011 for payment of $1,000.00 but not for the manure."

We agree with the district court's reasoning and find it did not err in granting MDM's motion for summary judgment on the Trust's fraudulent misrepresentation claim.

## IV.    CONCLUSION

Because we find a genuine issue of material fact with regard to the Trust's oral contract claim, we reverse the judgment of the district court on the oral contract issue and remand the case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**