# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-1310
Filed May 13, 2026

———————————

**Craig Malin,**
Plaintiff–Appellant,

v.

**Sarah Watson, Deb Anselm, Astrid Garcia, and Lee Enterprises, Inc.,**
Defendants–Appellees.

———————————

Appeal from the Iowa District Court for Scott County,
The Honorable Mark D. Cleve, Judge.

———————————

**AFFIRMED**

———————————

John T. Flynn of Brubaker, Flynn & Darland, P.C., Davenport,
attorney for appellant.

Ian J. Russell and Jenny L. Juehring of Lane & Waterman LLP, Davenport,
attorneys for appellees.

———————————

Considered without oral argument
by Schumacher, P.J., and Ahlers and Badding, JJ.
Opinion by Schumacher, P.J.

1

**SCHUMACHER, Presiding Judge.**

Craig Malin appeals the district court's granting of summary judgment in favor of the defendants on his claims of defamation, defamation by implication, and false light invasion of privacy, asserting the court erred in finding Malin is a public official, by ignoring affidavits from third parties stating Lee Enterprises, Inc.'s reporting caused them to trust Malin less, finding no malice based on corporate redirection of Malin's communications, in finding article I, section 7 of the Iowa Constitution does not guarantee a right to a jury trial for defamation claims, and in refusing to take judicial notice of alleged adjudicative facts.

## BACKGROUND FACTS & PROCEEDINGS

Claims stemming from Malin's employment with the city of Davenport come before this court for the third time. Malin was employed as the city administrator for Davenport from 2001 until 2015. His duties included implementing city policies of the city council, overseeing departments, and negotiating agreements for the city. One project that Malin pursued on behalf of the city was the conversion of a casino into a non-profit entity. While he was city administrator, Malin spoke to reporters, appeared on television, authored newspaper columns for the city, and lobbied on behalf of the city.

One of the defendants, Lee Enterprises, Inc. (Lee), is a media company based in Davenport that publishes newspapers throughout the country, including the Quad-City Times. The other defendants, Watson, Anselm, and Garcia are employed as journalists for Lee.

In 2015, the Quad-City Times published several editorials, columns, and articles related to Malin's negotiations concerning the construction of a

casino in Davenport. The agreement bound the city to pay for the groundwork for the construction. These publications reported that Malin negotiated the agreement on behalf of the city absent approval of the city council. They also reported that the then-mayor requested that Malin resign from his position because he did not advise the city council of details concerning a vote to fund the casino development. In 2015, pursuant to a separation agreement, Malin's employment with the city ended.

Then, in 2017, Malin filed suit against Lee, the Quad-City Times, and two columnists, claiming defamation, defamation by implication, and intentional interference with a contract. These claims were based on allegedly false statements within the 2015 Quad-City Times publications regarding Malin's role in the casino groundwork agreement. The district court granted summary judgment against Malin for his defamation claims. The intentional-interference claim proceeded to trial in 2019, with the jury returning a defense verdict. Malin appealed from this judgment, and this court affirmed. *See Malin v. Quad-City Times*, No. 19-1838, 2021 WL 1399837, at *3 (Iowa Ct. App. Apr. 14, 2021).

In 2020, Malin filed a second suit against Lee, its employees, and entities based on a 2019 editorial published in the St. Louis Post-Dispatch, a paper owned by Lee. The editorial was authored by the Post-Dispatch's editorial board, and it concerned the first lawsuit, alleging the suit could "put a chill on aggressive reporting that exposes wrongdoing." Malin's suit alleged defamation, false light invasion of privacy, unjust enrichment, intentional infliction of emotional distress, and negligent hiring. The defamation claims were again based on alleged falsity of the 2015 reporting concerning the casino issue.

The district court granted summary judgment on all claims, finding Malin failed to prove malice. Malin appealed, and this court affirmed. *See Malin v. Lee Enters.*, No. 22-1940, 2024 WL 260087, at *4 (Iowa Ct. App. Jan. 24, 2024).

In 2023, Lee published another article, which is the subject of this appeal. This article concerned pending litigation stemming from a collapsed apartment building in Davenport. The article reported that Malin was retained as an expert and went on to discuss his prior employment and duties:

> Malin was Davenport's city administrator from 2001 to 2015. The city council approved a separation and transition agreement signed by Malin in 2015 after the then-mayor called on him to resign. The resignation followed controversy over a deal to grade the lot at the privately owned casino.
>
> . . . .
>
> Then-assistant city administrator, Corri Spiegel[,] was appointed interim city administrator upon Malin's departure, then hired on in a permanent capacity in 2016 from among three finalists and more than 30 applicants.

In response to the article, Malin filed a 107-page petition in district court alleging defamation, defamation by implication, and false light invasion of privacy. The claims were based on the article stating Spiegel was the "assistant city administrator," rather than the "assistant to the city administrator," and that Malin's "resignation followed controversy over a deal to grade the lot at the privately owned casino." Malin takes issue with the terms "resignation," "controversy," and "assistant city administrator," alleging that he did not resign, his departure was not because of the casino controversy, and that Spiegel was not the "assistant city administrator."

4

Lee moved for summary judgment, and the district court granted it, finding the article was "substantially true" and Malin failed to show falsity in the reporting. Further, the court determined there was no genuine issue of material fact regarding injury, malice, or offensiveness. The district court also denied Malin's motion to reconsider, declining to take judicial notice of what Malin termed "adjudicative facts" and his claim that he was entitled to a jury trial under the Iowa Constitution.

## ANALYSIS

Malin argues that there are several genuine issues of material fact that should have precluded summary judgment against him.

> We review summary judgment motions for corrections of errors at law. Summary judgment is proper only when the entire record demonstrates the absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Our review is accordingly limited to whether a genuine issue of material fact exists and whether the district court correctly applied the law.

*Linn v. Montgomery*, 903 N.W.2d 337, 342 (Iowa 2017) (cleaned up). "We review the evidence in the light most favorable to the nonmoving party." *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007).

The three claims Malin asserts in this case are defamation, defamation by implication, and false light invasion of privacy. For the defamation claim, Malin is required to prove that Lee "(1) published a statement that (2) was defamatory (3) of and concerning [Malin], and (4) resulted in injury to [Malin]." *Bertrand v. Mullin*, 846 N.W.2d 884, 892 (Iowa 2014) (citation omitted). If it is determined that Malin is a public official, it must be established by clear and convincing evidence that the statement is false and was made with actual malice. *Id.* "A statement is made with actual malice

when accompanied by 'knowledge that it was false or with reckless disregard for its truth or falsity.'" *Id.* at 894 (citation omitted).

For defamation by implication, Malin must show that Lee "(1) juxtapose[d] a series of facts so as to imply a defamatory connection between them, or (2) create[d] a defamatory implication by omitting facts [such that] [Lee] may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct." *Stevens*, 728 N.W.2d at 827 (third alteration in original) (citation omitted). "Defamation by implication arises, not from what is stated, but from what is implied . . . ." *Id.*

As for Malin's claim of false light invasion of privacy, he must show that Lee placed him "before the public in a false light," and "(1) the false light in which [Malin] was placed would be highly offensive to a reasonable person, and (2) [Lee] had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [Malin] would be placed." *Bierman v. Weier*, 826 N.W.2d 436, 465 (Iowa 2013). False-light claims "are subject to the same constitutional restraints as defamation cases. It is unreasonable to allow a party to evade the standards surrounding defamation law because the plaintiff pled an alternative theory." *Jones v. Palmer Commc'ns, Inc.*, 440 N.W.2d 884, 894 (Iowa 1989) (internal citation omitted) (disapproved of on other grounds by *Schlegel v. Ottumwa Courier, a Div. of Lee Enters.*, 585 N.W.2d 217 (Iowa 1998)).

## I.    Whether Malin Qualifies as a Public Official

We first must determine if Malin qualifies as a public official and thus is subject to the actual-malice standard. *See Bertrand*, 846 N.W.2d at 894. "[T]he 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to

have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). "Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures and those who hold governmental office . . . ." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974).

Malin argues that he is not a public official because his separation from Davenport or the casino agreement is not "still a matter of lively public interest," there are no further "propositions for further change" concerning the separation or casino deal, and there was no "strong public interest" in any of the tasks that Malin performed for the city. *See Rosenblatt*, 383 U.S. at 87 n.14. Malin asserts that he "is so far removed from a former position of authority that . . . his responsibilities no longer ha[ve] the interest necessary to justify the [actual-malice] rule." *Id.* There are two circumstances that an individual may qualify as a public figure:

> In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.

*Stevens*, 728 N.W.2d at 826 (citation omitted). We agree with the district court that Malin qualifies as a public figure.

First, Malin operates a personal website that is open to the public to access. This website includes Malin's resumé, biography, and a compendium that describes his tenure as city administrator in a positive manner. Also, there are documents linked to the site which contain his opinions about the previous lawsuits against Lee.

Second, on January 1, 2024, Malin provided a letter to the editor for publication in the Quad-City Times concerning his grievances with Lee's reporting. Then, the next day, Malin submitted a draft for publication about the litigation against Lee. On May 22, 2024, Malin sent a letter to Lee's chief executive officer informing him that Malin was intending to hold a media conference regarding the second lawsuit against Lee. The letter included a lengthy statement about the litigation that Malin wanted to publish.

Lastly, the reason that Lee published the 2023 article was because Malin inserted himself into the building-collapse litigation as an expert witness, an event that attracted national media coverage. He produced an affidavit with his expert opinion on the incident, which was a public filing. Malin has "voluntarily inject[ed] himself ... into a particular public controversy and thereby [is] a public figure for a limited range of issues." *See id.*

## II. Whether the 2023 Quad-City Times Statements were False and Made with Actual Malice

Because Malin is a public figure, he must "show that a reasonable jury could find by clear and convincing evidence that (1) the challenged statements ... were false and (2) [Lee] made the statements with 'actual malice.'" *Id.* (citations omitted)). To prove malice, Malin must prove Lee knew the statements were false or published them with reckless disregard. *Id.* at 830. Reckless disregard requires "sufficient evidence to permit the conclusion that [Lee] in fact entertained serious doubts as to the truth of [the] publication." *Id.* at 831 (citation omitted).

Beginning with Malin's contention that Lee falsely reported that he "resigned" from his position as city administrator, we agree with the district court that the statement was substantially true. *See Behr v. Meredith Corp.*,

414 N.W.2d 339, 342 (Iowa 1987) ("If the underlying facts as to the gist or sting of the defamatory charge are undisputed, the court may determine substantial truth as a matter of law."). "Resignation" is defined as "[t]he act or an instance of surrendering or relinquishing an office, right, or claim. A formal notification of relinquishing an office or position; an official announcement that one has decided to leave one's job or organization, often in the form of a written statement." *Resignation*, Black's Law Dictionary (11th ed. 2019).

Here, the Succession, Transition, and Separation Agreement that "terminat[ed] [the] employment relationship" was mutual and reflected an agreement between Malin and the city that "Malin hereby terminates his employment with the City . . . ." The Agreement reflected that Malin relinquished his position with formal notification. There was no "reckless disregard for the truth" nor any proof the statement was false and is thus absent malice and not defamatory. *Stevens*, 728 N.W.2d at 831. Malin fails to show any genuine issue of material fact concerning falsity or malice based on this reporting.

Next, Malin takes issue with Lee's reporting that Spiegel's job title at the time Malin was city administrator was "assistant city administrator" rather than "assistant to the city administrator." It is not clear how this statement was false or reported with malice. The district court was correct in its analysis that "[t]his error is so inconsequential that it may be a scrivener's error. In any event, the omission of a preposition (to) and a definite article (the) in a[] government title do not go to the 'gist' and 'sting' of the article." *See Behr*, 414 N.W.2d at 342 ("We determine the gist or sting by looking at the highlight of the publication, the pertinent angle of it, and not to items of secondary importance which are inoffensive details, immaterial to the truth

of the defamatory statement." (cleaned up)). Further, the statement was not about Malin. We find Malin failed to show a genuine issue of material fact regarding the alleged defamatory nature of this statement by Lee.

Lastly, Malin contends the article's statement that "[t]he resignation followed controversy over a deal to grade the lot at the privately owned casino" amounts to defamation made with malice. He asserts that the controversy was created by Lee's reporting and did not exist independently. Again, we agree with the district court that no genuine issue of material fact exists regarding the defamatory nature of this reporting.

In Malin's prior lawsuit against Lee, we determined Lee's reporting of the casino controversy was substantially true because "Quad-City Times had published reports about Malin's involvement in a casino project in Davenport. That is a factually correct statement—Quad City Times did make such reports about Malin. And Malin does not dispute the reports played a part in his 'departure from office' as stated in the publications." *Malin*, 2024 WL 260087, at *4. The statement was substantially true because the record is replete with evidence that shows there was a controversy related to the casino project, and Lee simply reported it prior to the 2023 article. And, even if there was not a "controversy" between Malin and the city, he has failed to demonstrate any reputational injury or that he was placed in a false light which "would be highly offensive to a reasonable person." *See Bertrand*, 846 N.W.2d at 892; *Bierman*, 826 N.W.2d at 465, 447 (noting "an Iowa plaintiff must establish actual *reputational* harm when suing a media defendant, and not merely emotional distress or humiliation").[1]

---

[1] At the district court, Malin asserted that employers may be less willing to hire him because of Lee's reporting. In support of this assertion, Malin provided affidavits with preprinted questions that were filled out by "disinterested parties" who stated they were

Because Malin cannot prove falsity of the alleged defamatory reporting by Lee, his defamation and false-light claims fail to generate a genuine issue of material fact to survive summary judgment. *Jones*, 440 N.W.2d at 894; *Bertrand*, 846 N.W.2d at 892. Also, based on the above analysis, Malin has not shown a genuine issue of material fact regarding his defamation-by-implication claim. We agree with the district court that the alleged implications from Lee's reporting did not imply a defamatory purpose or, importantly, malice.[2] *See Stevens*, 728 N.W.2d at 827–28; *Bauer v. Brinkman*, 958 N.W.2d 194, 198 (Iowa 2021).

Lastly, Malin argues that Lee's diversion of his communications to the newspaper with "corrections" to its legal staff indicates an avoidance of the truth, showing malice. The district court did not address this contention nor rule on it. It is therefore not preserved for our review. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

## III. Whether Article I, Section 7 of the Iowa Constitution Guarantees the Right to a Jury Trial for Defamation Claims

Malin next asserts that the Iowa Constitution requires a jury trial for all defamation claims and thus bars summary judgment. He bases this claim on the language of article I, section 7, which provides that "every person may

---

less likely to trust Malin because of the article. We do not find these affidavits indicate anything more than speculative injury. As the district court pointed out, "[h]e provided no affidavit from a potential employer who was warned away by Lee Enterprises' reporting. He provided no chart determining a loss of income or any other cognizable damages."

[2] Although defamation by implication can occur when the alleged omission or inclusion of facts, not opinions, "imply a defamatory connection between them," a plaintiff must still prove malice to survive summary judgment. *See Stevens*, 728 N.W.2d at 827–28, 31 (citation omitted).

speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right. . . . In all *prosecutions* or indictments for libel, the truth may be given in evidence to the jury . . . ." (emphasis added). Malin cites *State v. White*, arguing that because "[t]he meaning of those words was fixed when they were adopted," the word "prosecution" is meant to apply to civil defamation claims, thus requiring a jury trial. *See* 9 N.W.3d 1, 10–11 (Iowa 2024).

We agree with the district court that article I, section 7 is properly understood to only apply to criminal prosecutions. As the district court stated:

> (1) [T]he Article uses the word "acquit," which implied a criminal prosecution, (2) the Article employs the word "charge," again indicating that the text was directed at criminal libel, and (3) the Article limits its application to "prosecutions or indictments," both of which are criminal actions. The Court cannot find even a scrap of evidence that Article I[,] § 7 applies to civil cases or that it prevents summary adjudication of defamation claims.[3]

Further, and importantly, article I, section 7 uses the language "[i]n all prosecutions or indictments for libel, the truth *may* be given in evidence to the jury . . . ." (emphasis added). The use of the discretionary term "may," as opposed to a mandatory term such as "shall," strongly indicates that there is no requirement of a jury trial or preclusion of summary judgment for

---

[3] The district court cited Black's Law Dictionary, 12th edition (2024), with definitions of "acquit," "charge," "prosecution," and "indictment." Malin's briefs cite Webster's 1828 dictionary, arguing the framers of the Iowa Constitution "all commonly understood and used" the words "prosecution" and "acquit" in a civil context, precluding application of summary judgment for defamation claims. Our supreme court precedent contradicts that argument. *See, e.g., Villarini v. Iowa City Cmty. Sch. Dist.*, 21 N.W.3d 129, 135–36 (Iowa 2025); *Bauer*, 958 N.W.2d at 202; *Bierman*, 826 N.W.2d at 451–52; *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 55 (Iowa 2018).

defamation claims. We find the district court did not err in this determination.

## IV. Whether the District Court Erred in Refusing to Take Judicial Notice of Alleged Adjudicative Facts

Malin's motion pursuant to Iowa Rule of Civil Procedure 1.904(2) requested the district court to take judicial notice of "Adjudicative Facts" that concerned prior Lee reporting and corporate procedures. The district court denied this request, finding the facts were "hotly contested." Lee and Watson both assert that error is not preserved on this issue. We agree.

Malin never raised this judicial-notice issue in his summary judgment filings. He addressed the issue for the first time in his rule-1.904(2) motion. Although the district court denied the request for judicial notice, because the issue was not raised in prior motions, it was not preserved for our review. *See Winger Contracting Co. v. Cargill, Inc.*, 926 N.W.2d 526, 543 (Iowa 2019) (holding that because a new issue, with "different factual predicate[s]," was not presented in the cross-motions for summary judgment and first introduced in a rule-1.904(2) motion, the claim was not preserved); *Harvest Credit Mgmt. VII, L.L.C. v. Lucas*, No. 08-0014, 2009 WL 1676660, at *2 (Iowa Ct. App. June 17, 2009) ("A motion pursuant to rule 1.904(2) is not properly used as a method to introduce a new issue, not previously raised before the court").

## CONCLUSION

For the reasons above, we affirm the district court's grant of summary judgment in favor of the defendants.

**AFFIRMED.**